77 N.J. Super. 224 (1962)
185 A.2d 877
HAROLD SCHWANKERT, ALEXANDER ALLISON, JOSEPH ZACK, WILLIAM MASON AND THOMAS MURPHY, PLAINTIFFS,
v.
NEW JERSEY STATE PATROLMEN'S BENEVOLENT ASSOCIATION, INC., AND PATROLMEN'S BENEVOLENT ASSOCIATION, NEWARK, N.J., LOCAL NO. 3, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 14, 1962.
*225 Mr. Ira A. Levy, attorney for plaintiffs.
Mr. Roger McGlynn, attorney for defendants.
*226 WAUGH, A.J.S.C.
This is an action in lieu of prerogative writs (mandamus) to compel the reinstatement of the plaintiffs in the New Jersey State Patrolmen's Benevolent Association, Inc. (hereinafter called "State P.B.A.") and in the Patrolmen's Benevolent Association of the City of Newark, New Jersey, Local No. 3 (hereinafter called "Local #3"). Plaintiffs also seek a declaratory judgment that a certain bylaw as well as the forfeiture of their membership is void.
One of the five plaintiffs, Joseph Zack, died prior to the hearing in this matter but, by agreement, his rights in a benefit plan called "Plan B" were tried by consent.
The factual circumstances leading up to this present controversy are as follows: Prior to November 3, 1961 the plaintiffs were all members in good standing of both the State P.B.A. and Local #3. They were also members of another organization known as the "Fraternal Order of Police." Presumably, because of their membership in this latter organization, each of the plaintiffs received a letter under the signature of the president of Local #3, notifying him of his automatic forfeiture of membership. No hearing was held in the local prior to such notification of forfeiture.
The bylaw of the State P.B.A. upon which this automatic forfeiture was based is article VIII, section 1, and provides as follows:
"Any member of any local of this association who shall join or become a member of any organization in or outside of the police department of which he is a member, except only the New Jersey State Chiefs Association, the purpose of such organization being to represent policemen in matters affecting their economic welfare, shall thereby automatically forfeit his membership in a local and in this association and all rights and benefits thereunder."
It should be noted here that there is considerable confusion in the record as to whether Local #3 ever adopted this bylaw. This will be discussed in more detail below.
After notification of their ouster by Local #3, the plaintiffs retained counsel who sought a review from the State *227 P.B.A. and a hearing was scheduled. The hearing, taken stenographically by a certified shorthand reporter, proved abortive because counsel for plaintiffs was refused permission to represent them. The plaintiffs and members of the State P.B.A. judiciary committee indulged in a rather prolonged argument throughout the proceeding. At the end of this "hearing" the judiciary committee held: "We concur with the ruling of the Executive Board of Local #3 in suspending the five named members for their actions."
Plaintiffs then instituted the present action for their reinstatement and a declaration as to the validity of the bylaws in question. Counsel was conscious of the reluctance of our courts to interfere in matters involving "social rights," as distinguished from economic or property rights, and so the plaintiffs contend that their forfeiture of membership deprives them of various financial benefits under both a retirement and a death benefit plan. The nature of their interests is explained in items 10 and 11 of the stipulation of facts filed by counsel, which are as follows:
"10. These plaintiffs, while members of the Patrolmen's Benevolent Association, Newark, N.J. Local Number 3, contributed to two beneficiary plans. First of these plans was a death benefit plan called `Plan B.' Upon the death of any member of the association, each member participating in the benefit plan would be obliged to contribute the sum of $1.00 and the proceeds of the contribution, less a certain amount held in reserve, was paid to the family of the deceased policeman. Plaintiffs have paid from $100.00 to $400.00 into this Plan and contend they have an economic interest therein. Upon reaching age 65, a member of the beneficiary `Plan B' is entitled to be considered a paid-up member of the Plan and is entitled to death benefits without further contributions.
11. Plaintiffs also contributed to a benefit plan called `Plan C' which is a Retirement Benefit Plan. Upon the retirement of any member of the association, each member participating in the benefit `Plan C' contributed the sum of $.25, which amount was thereafter contributed to the retiring association member. Plaintiffs have contributed amounts of money ranging from under One Hundred to several Hundred Dollars to this Plan, and would be entitled to receive this benefit upon retirement."
The procedural rules of both the State P.B.A. and Local #3 leave much to be desired. In substance, article XXV *228 of the bylaws of Local #3 gives members the right to have charges preferred against them in writing; to notification of such charges; to representation by a member; and perhaps even to a disapproval by two-thirds of the membership of the findings and recommendations of the judiciary committee of the local.
Article XXIV of the bylaws of the State P.B.A. requires the exhaustion of administrative remedies by providing that "No court proceedings shall be taken by any member of a local association against this association or against any local association without first seeking redress from the state organization." Conspicuously absent, however, is any provision for handling such appeals. The ad hoc method adopted in the present case of a hearing by the State P.B.A. judiciary committee was borrowed from the bylaw provisions dealing with charges against a delegate to the State P.B.A.
Stripped of all the refinements advanced in the arguments of counsel, the basic issues in this matter are:
(1) Whether the forfeiture of the plaintiffs' membership was proper;
(2) Whether the bylaw providing for automatic forfeiture is valid;
(3) If the answer to either 1 or 2 is in the negative, what action must be taken to protect these plaintiffs' interests?
The law is settled that a member of an organization such as the defendants here involved has a right to a notice and hearing and an opportunity to submit a defense. Sibley v. Board of Management of Carteret Club of Elizabeth, 40 N.J.L. 295 (Sup. Ct. 1878). The peremptory ousting of these plaintiffs was without benefit of these fundamental safeguards and, consequently, was without legal justification. Even assuming the regularity of the adoption of article VIII, section 1, by Local #3, or that it is binding upon its members without adoption at the local level, fundamental due process must be observed.
*229 The bylaw in question is not self-executing. There must be a determination as to the meaning of this bylaw, including the very basic question of what is meant by the phrase "the purpose of such organization being to represent policemen in matters affecting their economic welfare." Even though the plaintiffs admit membership in the Fraternal Order of Police, there still must be a definitive finding that this organization comes within the prohibition of this clause. The initial determination of these questions belongs with the organization and not with the court. Plemenik v. Prickett, 97 N.J. Eq. 340 (E. & A. 1924); Ace Bus Trans. Co. v. South Hudson, etc., Ass'n, 118 N.J. Eq. 31 (Ch. 1935). See, generally, Chafee, "Internal Affairs of Associations not for Profit," 43 Harv. L. Rev. 933, 1020-1029 (1930).
The plaintiffs here exhausted the ad hoc appellate remedy suggested by the president of the State P.B.A. Moreover, the rule of exhaustion of remedies does not apply where the bylaws make no provision for review by a parent body, since no remedy is actually provided in the State P.B.A. bylaws. Leeds v. Harrison, 7 N.J. Super. 558, 574 (Ch. Div. 1950).
Counsel for the defendants urges that if the court concludes the ouster was illegal, the court should do no more than order the reinstatement of the plaintiffs. Thereafter, a proper ouster proceeding presumably will be held. There is some merit in this contention. A court will not retry an expulsion case on the facts, or determine on its own judgment whether or not the member should have been expelled. Zeliff v. Knights of Pythias, 53 N.J.L. 536 (Sup. Ct. 1891). However, under our assignment system any future action involving these parties will be heard by me; and while the views from this point forward may be obiter, I think I should express an opinion on some collateral issues. They may be helpful in the solution of the issues between the parties.
Based upon the record before me, I am satisfied that both the State P.B.A. and Local #3 are not organizations, "membership in which is an economic necessity." See Falcone *230 v. Middlesex Cty. Medical Society, 34 N.J. 582 (1961), and cases cited therein. There was absolutely no proof that membership in the P.B.A. is in any way necessary to either employment or advancement in police work.
Nor do I find any basis for a holding that plaintiffs' "civil rights" were offended or their "property rights" invaded by the adoption of a bylaw such as that involved here. The plaintiffs' right to personally petition to seek better economic advantage is not impeded. They may personally, or through any group or association, petition for economic gains by way of pay increases or better working conditions. It was suggested in the plaintiffs' brief, but not proved, that the defendants maintained monopolistic control over membership, since, allegedly, the majority of patrolmen in New Jersey are members. Even if this were proven, it would not deprive any person in any way of the right to seek economic betterment.
The exact nature of the rights of these plaintiffs by virtue of their participation in Benefit Plans "B" and "C" presents an interesting question. At the very least, these plans are in the nature of an insurance agreement and as such constitute a property interest sufficient to require a notice and hearing before any expulsion from membership which would deprive the members of their benefits thereunder. Venezia v. Italian Mutual Benev. Society, 74 N.J.L. 433 (Sup. Ct. 1907); Byrne v. Supreme Circle Brotherhood of the Union, 74 N.J.L. 258 (Sup. Ct. 1907); see also 20 A.L.R.2d 348.
It should also be noted that "The constitution and by-laws of a voluntary association become a part of the contract entered into by a member when he joined such association." Leeds v. Harrison, 7 N.J. Super. 558, 570 (Ch. Div. 1950). By the same logic, any duly adopted additions or amendments to such constitution and bylaws during the continuance of such membership are equally as binding on the members. Ace Bus Trans. Co. v. South Hudson, etc., Ass'n, 118 N.J. Eq. 31 (Ch. 1935).
*231 There is considerable confusion in the record concerning the adoption of article VIII, section 1, by Local #3. There was an abortive attempt at adoption on October 9, 1951, which was prior to its adoption by the State P.B.A. Article XXIII of the bylaws of Local #3 would appear to outline the procedure for passage of a bylaw. Proof of the adoption of the bylaw in question by the local must, however, await further action.
In summary, I find:
(a) The attempted ouster of these plaintiffs was without notice and hearing, and was void:
(b) The legal representative of the deceased plaintiff, Joseph Zack, is entitled to the death benefits provided by "Plan B";
(c) The matter must be remanded to Local #3 for further proceedings. If the charges are preferred again all proper questions may be raised including the adoption of the bylaw, its meaning, scope and effect, etc.
This court will retain jurisdiction until final disposition of the matter.