94 N.J. Super. 243 (1967)
227 A.2d 712
JANET L. HIGGINS, PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
THE AMERICAN SOCIETY OF CLINICAL PATHOLOGISTS, A CORPORATION OF THE STATE OF COLORADO, DEFENDANT-RESPONDENT, CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1966.
Decided March 13, 1967.
*246 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Coleman T. Brennan argued the cause for appellant.
Mr. Frederick B. Lacey argued the cause for respondent (Messrs. Shanley & Fisher, attorneys; Mr. John D. Conner, District of Columbia Bar, of counsel).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff appeals from a summary judgment in favor of defendant. Defendant cross-appeals from the trial court's denial of its motion to quash service and dismiss the complaint on the grounds of lack of jurisdiction, insufficiency of service, and forum non conveniens.
Plaintiff, a medical technologist, sought by this in lieu proceeding to compel defendant American Society of Clinical *247 Pathologists (society) to renew her certification as such and to reinstate her name on its registry of medical technologists.
Medical technologists perform laboratory tests to aid physicians in detecting, diagnosing and treating diseases. Defendant society is a nonprofit corporation of the State of Colorado having its main office in Chicago, Illinois. Its purposes, as set forth in its constitution are:
"(a) to promote the practice of scientific medicine by a wider application of pathology to the diagnosis and treatment of disease, (b) to stimulate research in all branches of pathology, (c) to establish standards for performance of various laboratory procedures, (d) to elevate the scientific and professional status of those specializing in this branch of medicine, and (e) to encourage closer cooperation of pathologists with other physicians and with medical technologists."
The society's Board of Registry, which has its headquarters in Muncie, Indiana, maintains a "Registry of Medical Technologists" composed of non-doctors whose qualifications have been found to meet the standards of the society. For the purpose of carrying out its functions, the Board of Registry conducts qualifying examinations of applicants and issues certificates to those who qualify. Certification is for one year only, and during that period they are entitled to use after their names the title MT (ASCP).
In 1963 plaintiff graduated from Rider College with a B.S. degree in medical technology, after completing the required period of hospital training at Mercer Hospital, Trenton. She thereafter passed the examination conducted by the society, was certified and had her name entered in the society's registry of medical technologists. When her certification was renewed in 1964 she was employed by Mercer Hospital, but later she terminated her employment there and accepted employment with Egan Laboratories, an independent bio-analytical laboratory located in Trenton. N.J.S.A. 45:9-42.18 provides that:
"Each bio-analytical laboratory shall be under the direct and constant supervision of either
*248 (a) a person licensed to practice medicine and surgery in the State of New Jersey, or
(b) a licensed bio-analytical laboratory director."
The standards of conduct (code of ethics) for medical technologists adopted by defendant's Board of Registry provided:
"I. A medical technologist will work at all times under the direction or supervision of a pathologist or other duly qualified and licensed doctor of medicine, such qualifications being determined on the basis of accepted medical ethics. * * *
II. A medical technologist will not act as owner, co-owner, advisor or employee, or by means of any subterfuge, participate in an arrangement whereby an individual not regularly licensed to practice medicine is enabled to own or operate a laboratory of clinical pathology." (Emphasis added)
In her new employment plaintiff was not working under the direction or supervision of a person licensed to practice medicine and surgery, but her supervisor was a non-doctor holding a bio-analytical laboratory director's license issued by the State Board of Medical Examiners. N.J.S.A. 45:9-42.18. For this reason the society denied plaintiff's application for renewal of her certification for 1965. She thereupon brought the present action contending, inter alia, that the quoted standards are contrary to the public policy expressed in N.J.S.A. 45:9-42.1 et seq.
We turn first to the question of jurisdiction raised by the cross-appeal. Traditionally, the acquisition of jurisdiction over a foreign corporation has involved (1) the power to subject it to the jurisdiction of the court, and (2) bringing it before the court by proper notice. Here defendant contends that its activities were not such as to subject it to the court's jurisdiction and, assuming that they were, service of process was defective.
It is now well settled that to subject a foreign corporation to an in personam judgment where the corporation is not present within this State, due process requires only that it have such "minimum contacts" with the State that the maintenance *249 of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, 102 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); J.W. Sparks Co. v. Gallos, 47 N.J. 295 (1966); Roland v. Modell's Shoppers World of Bergen County, Inc., 92 N.J. Super. 1 (App. Div. 1966); Hoagland v. Springer, 74 N.J. Super. 275 (Law Div. 1962), affirmed 75 N.J. Super. 560 (App. Div. 1962), affirmed 39 N.J. 32 (1962); compare Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
While no hard and fast rule has been evolved to cover all situations, the three rules which can be drawn from a reading of the numerous cases on the subject have been summarized in Note, 47 Geo. L.J. 342, 351-352 (1958) as follows:
"(1) The nonresident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.
(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a `substantial minimum contact.'
(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of `fair play' and `substantial justice.' If this test is fulfilled, there exists a `substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens."
We are satisfied that here each of such requirements have been met.
Defendant society is a corporation composed of members of the medical profession specializing in the field of pathology. A substantial number thereof reside or practice within this *250 State. In furtherance of the society's professional purposes and, presumably to insure an adequate supply of trained technologists, it has, as noted, undertaken the task of supervising the training and qualification of students in that field. Those who successfully complete the required courses in schools which meet its standards, and who thereafter pass its qualifying examination, are certified to be medical technologists as defined by it and are annually listed in the society's registry.
In carrying out this program the society has received and processed applications for certification from New Jersey residents and thereafter conducted examinations of those whose qualifications have been found to be satisfactory. Such examinations have been held in New Jersey on a regular basis, a registration fee of $20 being charged for the original one and an additional fee of $3 for each renewal certification. As part of its over-all activity in the field, in conjunction with the American Medical Association (A.M.A.), the society has conducted investigations in New Jersey of the teaching staffs and facilities of schools of medical technology within the State, and some 27 hospitals operating such schools have been approved by it. The society has also published a "Technical Bulletin of the Registry of Medical Technologists" containing advertising from New Jersey suppliers and employers, which has been distributed to pathologists, medical technologists and certain others within this State.
On the basis of the foregoing, we are satisfied that defendant possessed the minimum contacts necessary to confer jurisdiction in personam and that plaintiff's asserted cause of action arose out of the activities of defendant within the State. We further hold that the assumption of jurisdiction based thereon is consonant with the due process tenets of fair play and substantial justice and that the doctrine of forum non conveniens does not call for a different result.
We perceive no merit to the contention that since defendant is a nonprofit corporation, the rule enunciated in *251 International Shoe Co. and the cases which have followed it is inapplicable. No case is cited to support this contention and our own research reveals none. Nor do we find anything in the reasoning underlying the rule which would render it inapplicable to nonprofit corporations. In general, there is no distinction between business corporations and those not operated for profit so far as their relation to states other than those of their incorporation are concerned. 23 Am. Jur., Foreign Corporations, § 5, p. 19 (1939).
We likewise hold that service of process upon Dr. Frank Campo was valid. Dr. Campo, while admittedly not an officer, trustee, general or managing agent of defendant, was one of its members. He was served at St. Francis Hospital, Trenton, New Jersey, as he was monitoring an examination on behalf of the society of applicants for its certification as medical technologists. In the performance of that duty he qualified as a servant of defendant acting in the discharge of his duties, within the intendment of R.R. 4:4-4(d). Our conclusion in this regard is confirmed by the statement in the affidavit of the deputy sheriff who made service that:
"Upon my explaining to Dr. Frank Campo that I was about to make service of process upon the said defendant by handing to him the summons and complaint in this action, he thereupon, in my presence, placed a telephone call to a Mrs. Ruth Drummond in Muncie, Indiana, and inquired of her as to whether he such [sic] accept such service of process. Upon hanging up, he informed me that he was to be called back with instructions. Shortly thereafter, Dr. Campo was called back to the telephone and spoke to someone, not identified, concerning the matter. Thereupon, he informed me that he was instructed to accept service for the defendant. I then handed to him the copies of the summons and complaint in this action."
The cases relied upon by defendant antedate the adoption of R.R. 4:4-4 (d) and we find them to be inapposite. Cf. Wright v. News Syndicate Co., 35 N.J. Super. 133, 135 (Law Div. 1955). It follows that defendant's motion to dismiss on jurisdictional grounds was properly denied.
*252 The complaint charged, in substance, that (1) defendant exercised a monopolistic control over the profession of medical technology within the State; (2) in the exercise of its monopolistic control, through the operation of its code of conduct, defendant confined medical technologists to employment with medical doctors, and (3) plaintiff was deprived of her certification and listing in defendant's registry as a medical technologist by reason of her employment in a bio-analytical laboratory operated by a non-doctor, in violation of the public policy of the State which permitted operation of such laboratories by non-doctors. N.J.S.A. 45:9-42.1 et seq. By reason thereof she assertedly suffered and would continue to suffer "a loss of professional employment, loss of opportunity for professional employment, loss of opportunity for professional advancement, and a diminution of earnings from professional employment." Plaintiff sought renewal of her certification, reinstatement of her name in the registry, and a declaration that the challenged section of defendant's code of conduct was null and void.
In its answer defendant denied the charge of monopoly but admitted that it had engaged in the evaluation and certification of approved schools of medical technology in New Jersey on the basis of standards established by the A.M.A. It conceded that it had issued certificates to such qualified medical technologists as agreed to engage in employment in accordance with its standards of conduct for medical technologists. It asserted that this code was brought to the attention of plaintiff prior to her examination and certification. It admitted its refusal to continue to list plaintiff's name in its registry after she ceased to be employed by a laboratory under the direction and supervision of a pathologist or doctor of medicine, asserting that she would again be eligible for registration and listing when she engaged in employment within the scope of the activities permitted by its standards.
Defendant thereafter moved for an order dismissing the complaint on the ground that it failed to state a cause of action upon which relief could be granted or, alternatively, for *253 summary judgment. In support of the motion defendant relied upon the affidavit of Dr. Wellington B. Stewart, chairman of its Board of Registry, plaintiff's answering affidavit, her answers to interrogatories, and her deposition. The court found in favor of defendant on both grounds.
Our consideration of the record before us leads us to the conclusion that there was no genuine issue as to any material fact challenged and that defendant was entitled to a judgment of dismissal as a matter of law.
A motion for summary judgment is designed to provide a prompt and inexpensive method of disposing of a cause where a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion, clearly demonstrate the absence of any genuine issue of material fact requiring disposition at trial. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954). On such a motion all inferences of doubt are resolved against the movant, papers supporting the motion are closely scrutinized and opposing papers indulgently treated. Id., at p. 75. The summary judgment proceeding is designed to pierce the allegations of the pleadings to show that the facts are otherwise than as alleged. Ibid.
The affidavit of Dr. Stewart, on which defendant's motion was principally buttressed, described the standards of defendant's Board of Registry as:
"[B]ased upon the assumption that the medical technologist will be working under the direction and supervision of a physician; the certification is intended to signify competence of the medical technologist to work under these circumstances. Certification by the Registry is not intended to signify competence of the medical technologist to work in an independent capacity or to work under non-medically trained persons. Standards to fit these conditions might well be different. To require that the standards of the Board of Registry be used to certify the qualifications of a medical technologist to work in an independent capacity, or under the supervision of nonmedical personnel would entail a fundamental change in the certification policies of the Board of Registry."
*254 As to their operation in practice, he stated:
"The Standards of the Board of Registry are of a voluntary nature. Certification based on these standards is of a voluntary nature. The American Society of Clinical Pathologists does not advocate or take legislative, political or any type of coercive action to secure compliance with its standards. So far as I am aware, certification by the Board of Registry of the American Society of Clinical Pathologists is not a qualification for employment of a medical technologist by any governmental or public institution. Graduation from an AMA-ASCP approved school of medical technology usually is made a requirement for employment by public agencies as distinguished from certification by the Board of Registry. For example, the requirements of the United States Civil Service Commission, the National Institutes of Health, and the Veterans Administration, all of whom are employers of a large number of medical technologists, require graduation from an AMA-ASCP approved school of medical technology, but they do not require certification by the Board of Registry. Because of the shortage of medical technologists it frequently is necessary to employ medical technologists who are not certified by the Board of Registry. For example, in the laboratory of the University of Kentucky Hospital, of which I am the Director, we employ a number of technologists who are not certified by the Board of Registry.
In 1962 the Committee on Medical Technology of the Catholic Hospital Association made a study entitled Who Staffs the Clinical Laboratory? This report was based upon a study conducted by the Committee of Catholic Hospitals throughout the United States. Table 2 of that report, which is attached hereto as Appendix D, shows the staffing pattern for large hospitals. This study shows that although American Society of Clinical Pathologists registered medical technologists constitute the largest percentage of medical technologists employed, there are a significant number of non-ASCP certified medical technologists employed by the hospitals. Some are not certified by any registry. Some are registered by the American Medical Technologists, an organization which has no affiliation with ASCP or AMA."
And further:
"An `Accrediting Commission for Medical Technology Schools,' incorporated in Cleveland, Ohio in 1962 to accredit these schools appears not to be functioning. Neither this nor a `National Council of Medical Technology Schools' is under AMA auspices, just as registration of the graduates of commercial schools by any of three organizations  the American Medical Technologists, the International Registry of Independent Medical Technologists, or the Registry of Medical Technologists of the International Society of Clinical Laboratory Technologists  is separate from registration by the Board of Registry of Medical Technologists of the American Society of Clinical Pathologists."
*255 Plaintiff's own contentions, as revealed in her deposition, affidavit and answers to interrogatories, did not factually controvert the foregoing. She was familiar with defendant's standards of conduct when she originally applied for certification, and she accepted employment at Egan Laboratories with the knowledge that her certification would not be renewed while so employed. Her position there was not conditioned in any way on her certification by defendant, nor had her progress been impeded by the lack of such certification. She had suffered no actual economic loss as the result of its termination. She conceded that there had been no requirement at the hospital where she was formerly employed that a medical technologist be certified by defendant and that she knew of no hospital which required such certification as a prerequisite to employment. She had been told that her certification would be restored when she ceased engaging in employment which was in conflict with defendant's code.
Plaintiff urges that her asserted cause of action comes "squarely within" the principles enunciated in Falcone v. Middlesex County Medical Society, 34 N.J. 582 (1961), and Greisman v. Newcomb Hospital, 40 N.J. 389 (1963). In the former case Dr. Falcone brought suit to compel his admission to membership in defendant county medical society. Although duly licensed to practice medicine in New Jersey following his graduation from a medical school approved by the New Jersey State Board of Medical Examiners (but not by the A.M.A.), his application for membership in the county society had been denied because the society applied an unwritten membership requirement of four years of study at a medical college approved by the A.M.A. While he had also graduated from the Medical School of the University of Milan, which was approved by the A.M.A., his period of study there had been less than four years.
In affirming the judgment of the Law Division which held him entitled to admission to membership in the county society, the Supreme Court found that:
*256 "The Society's declaration of his ineligibility and its refusal to admit him to membership have had seriously adverse economic and professional effects on Dr. Falcone. He was a member of the medical staffs of the Middlesex General Hospital and St. Peter's General Hospital in New Brunswick but was dropped because they, like other hospitals in the area, require that their staff physicians be members of the County Medical Society. It seems entirely evident that Dr. Falcone cannot successfully continue his practice of surgery and obstetrics or properly serve his surgical and obstetric patients without the use of local hospital facilities; he testified that in order to earn a livelihood it is necessary `to belong to the local society' for `otherwise, you cannot use the hospitals.' The virtual monopoly which the Society possesses in fact over the use of local hospital facilities results from the well known interrelationship between the County Society, the State Medical Society, the American Medical Association and the Joint Commission on Accreditation of Hospitals." (34 N.J., at p. 587)
And further:
"It must be borne in mind that the County Medical Society is not a private voluntary membership association with which the public has little or no concern. It is an association with which the public is highly concerned and which engages in activities vitally affecting the health and welfare of the people. * * * Through its interrelationships, the County Medical Society possesses, in fact, a virtual monopoly over the use of local hospital facilities. As a result it has power, by excluding Dr. Falcone from membership, to preclude him from successfully continuing his practice of obstetrics and surgery and to restrict patients who wish to engage him as an obstetrician or surgeon in their freedom of choice of physicians. Public policy strongly dictates that this power should not be unbridled but should be viewed judicially as a fiduciary power to be exercised in reasonable and lawful manner for the advancement of the interests of the medical profession and the public generally; the evidence firmly displays that here it was not so exercised and that Dr. Falcone was fairly and justly entitled to the relief awarded to him in the Law Division. [at pp. 596-97]

* * * * * * * *
When the County Society engages in action which is designed to advance medical science or elevate professional standards, it should and will be sympathetically supported. When, however, as here, its action has no relation to the advancement of medical science or the elevation of professional standards but runs strongly counter to the public policy of our State and the true interests of justice, it should and will be stricken down." (at p. 598)
*257 In Greisman v. Newcomb Hospital, supra, the rationale of Falcone was similarly applied to a controversy between a private nonprofit hospital which enjoyed a virtual monopoly in its area, received a large part of its funds from public sources and through public solicitation, and received tax benefits because of its nonprofit aspects, and a physician whose application to be admitted to its courtesy staff had been refused consideration because of his graduation from a medical school which, while meeting the requirements of the State Board of Medical Examiners, had not been approved by the A.M.A.
The essential facts revealed by the record before us, considered in the light most favorable to plaintiff, are clearly distinguishable from those found in either Falcone or Greisman. Plaintiff continues to be actively employed in her profession. The use by her of the designation MT (ASCP) during the period of her certification indicated no more than that she was a medical technologist approved by defendant. In supervising the training of such technologists and later certifying them, defendant was not exercising a monopolistic control over the practice of medical technology in New Jersey. Compare Wilson v. Newspaper and Mail Deliverers' Union, 123 N.J. Eq. 347, 350-351 (Ch. 1938). Certification by it and listing in its registry have not been shown to be an economic necessity or a sine qua non to employment or advancement. Trautwein v. Harbourt, 40 N.J. Super. 247 (App. Div. 1956), certification denied 22 N.J. 220 (1956); Schwankert v. N.J. State Patrolmen's, etc., Inc., 77 N.J. Super. 224, 229 (Law Div. 1962); Carroll v. Local No. 269, etc., Electrical Workers, 133 N.J. Eq. 144, 147 (Ch. 1943); James v. Marinship Corp., 25 Cal.2d 721, 155 P.2d 329 (Sup. Ct. 1944). Further, plaintiff has suffered no concrete or ascertainable injury. The injury she allegedly suffers, because of her failure to receive bulletins from defendant and her loss of "voting" membership in the American Society of Medical Technologists and the New Jersey Society of Technologists, is de minimis.
*258 Further, without passing upon plaintiff's status to raise the point, we find no merit to her contention that defendant's rule making her registration contingent upon continued employment in a laboratory which is under the supervision of a licensed doctor contravenes our public policy which permits the operation of "bio-analytical" laboratories under the supervision of qualified non-doctors. N.J.S.A. 45:9-42.1 et seq. The statutory authorization for the operation of such laboratories does not carry with it an obligation on the part of defendant to continue to certify technicians employed by such laboratories or carry their names in its registry, in the absence of compliance with its code of ethics and standards of conduct.
In view of the foregoing, we deem it unnecessary to pass upon the alleged insufficiency in law of the complaint. We find the remaining points raised to be without merit.
Affirmed. No costs.