141 N.J. Super. 548 (1976)
359 A.2d 493
RONALD BLESSING AND LAURA BLESSING, PLAINTIFFS-APPELLANTS,
v.
FRANK PROSSER, INDIVIDUALLY, AND T/A GREEN HAVEN RESORT MOTEL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 12, 1976.
Decided May 25, 1976.
*549 Before Judges FRITZ, SEIDMAN and MILMED.
Messrs. Friedman & D'Alessandro, attorneys for appellants (Mr. Michael F. Lombardi on the brief).
Messrs. Wolff, Britt & Riehl, attorneys for respondent (Mr. John E. Riehl on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Planitiffs' complaint in tort against defendant was dismissed below on the ground that New Jersey did not have personal jurisdiction over defendant. They appeal, asserting that defendant's advertising in travel books which the American Automobile Association (AAA) furnished without cost to its members was a sufficient "contact" to invoke so-called "long-arm" service and personal jurisdiction.
Plaintiffs urge us to examine the nature of the advertising thus appearing. Having done that, we understand their anxiety and petition in this regard, for careful consideration of the total circumstances involved conduces to the view that advertising of this nature does indeed exceed the "minimal contact" necessary for long-arm jurisdiction.
Significant among these circumstances is that the advertising thus appearing is substantially more than a solicitation of business. In addition to being all of that, it is accompanied by AAA assurances that "Official Appointment" listings, of *550 which defendant was one, are of the one-out-of-seven-seen which meets high AAA standards, that each has been "personally" measured and that the therein published rates and services are guaranteed by the endorsed facility to AAA members even as against a change in rates between publications of the volume. Beyond this such officially appointed hotel, motel, resort or restaurant must also pay a "modest annual fee." The persuasive attraction of the advertising itself is enhanced by the affirmative endorsement and guarantee of the prestigious American Automobile Association. The guarantees of the presentation sounding more in contract than anything else, this is no "mere inclusion of an advertisement in a publication," as defendant argues.
The following appears in Restatement, Conflict of Laws 2d, § 37 at 156 (1971):[1]

Causing Effects in State by Act Done Elsewhere
A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.
We observe that this statement does not even require that the "effects" be causatively intended. It needs only that they occur. If this is the law in New Jersey, as we believe it to be, then a fortiori do we have jurisdiction where, as here, the advertising was by its very nature intended to and did in fact cause "effects" in this State. This "effects" concept was recognized in Avdel Corp. v. Mecure, 58 N.J. 264 at 268 (1971), in which our Supreme Court also observed that, "we will allow out-of-state service to the uttermost limits permitted by the United States Constitution."
Defendant urges that most of the cases defining the long-arm reach from New Jersey have "a much more substantial *551 connection with New Jersey than the case at bar." The truth of this statement does not diminish the proposition that all that is required is "minimum contacts with it [the forum] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). We are satisfied that no such offense results from the circumstances here.
Nor does the fact that previous cases have, for the most part, involved a physical intrusion into New Jersey beyond seductive advertising militate against our policy, accurately described (in a totally different context) in Foris v. Foris, 103 N.J. Super. 316, 323 (Ch. Div. 1968), as one designed "to obtain, within constitutional limits, jurisdiction over a party defendant in the commercial world in the interest of protecting its citizens." Noticed there also was "the State's interest in the commercial sphere to protect its citizens by diminishing the harsh and arbitrary effect of state boundaries."
The policy pronouncements and the standards implicit in Roche v. Floral Rental Corp., 95 N.J. Super. 555 (App. Div. 1967), aff'd o.b. 51 N.J. 26 (1968), which also recognized the wisdom of Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732 (Sup. Ct. 1966), are here achieved. We see no valid distinction, in a case where persuasion in New Jersey by a purveyor of goods or services induces our citizenry to the acceptance of those goods or services, based upon where the use occurs. Nor do we see any policy reason to draw a line because a printing press can be shipped to New Jersey but a New York resort cannot. See VanEeuwen v. Heidelberg Eastern, Inc., 124 N.J. Super. 251 (App. Div. 1973). Cf. Young v. Gilbert, 121 N.J. Super. 78 (Law Div. 1972).
Reversed and remanded for further proceedings consistent with the foregoing.
*552 SEIDMAN, J.A.D. (dissenting).
The majority would reverse the order entered below dismissing the complaint[1] and remand the matter for further proceedings. They conclude that on the facts here present there has been a sufficient showing of minimum contact with this forum by defendant to support substituted service of process upon him under R. 4:4-4(e). I disagree.
My colleagues pay dutiful homage to International Shoe Co., v. Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), by citing the landmark principle of law which has spawned its numerous progeny:
* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [at 316, 66 S.Ct. at 158.][2]
See J.W. Sparks Co. v. Gallos, 47 N.J. 295, 300 (1966); Higgins v. American Soc. of Clinical Pathologists, 94 N.J. Super. 243, 248 (App. Div. 1967), rev'd on other grounds, 51 N.J. 191 (1968); Roland v. Modell's Shoppers World of Bergen County, Inc., 92 N.J. Super. 1, 6 (App. Div. 1966); Hoagland v. Springer, 74 N.J. Super. 275, 280 (Law Div. 1962), aff'd 75 N.J. Super. 560 (App. Div. 1962), aff'd 39 N.J. 32 (1962).
*553 While our long-arm rule allows out-of-state service "to the uttermost limits permitted by the United States Constitution," Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971), the relevant question here, as always, is whether there were contacts with this State by the nonresident defendant, and, if so, whether they were sufficient reasonably to justify jurisdiction over him in an action related to those contacts. Id. at 269. It has been pointed out that there is no objective test by which to judge the facts of a particular case to determine if the assertion of in personam jurisdiction exceeds the limits of constitutional due process, and that United States Supreme Court cases after International Shoe have failed to develop any precise standard as to what those "minimum contacts" must be. Benjamin v. Western Boat Building Corp., 472 F.2d 723, 725 (5 Cir.1973); cert. den. 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973). It is thus clear that "each case which raises questions of `minimum contacts' * * * must be decided on its own peculiar and particular set of facts," Oliff v. Kiamesha Concord, Inc., 106 N.J. Super. 121, 124 (Law Div. 1969), rather than "in a statement of dogmatic rules of all-inclusive principles." See Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292, 295 (6 Cir.1964).
A broad test is set forth in International Shoe:
It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend largely upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties or relations. * * *
But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise *554 out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to undue. [326 U.S. at 319, 66 S.Ct. at 159.]
It is important, however, to pause momentarily at this point to note the caveat in Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958):
* * * But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him. [357 U.S. at 251, 78 S.Ct. at 1238]

* * * * * * * *
* * * The application of that rule [contact with the forum] will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [357 U.S. at 253, 78 S.Ct. at 1240; emphasis supplied][3]
The facts in this case are gleaned from the affidavits submitted in support of and in opposition to defendant's motion. I accept their accuracy for the purpose of this discussion.
Defendant Frank Prosser owns and operates the Green Haven Resort Motel in Lake George, New York. On August 23, 1973 plaintiff Ronald Blessing, a resident of this State, was a guest at the motel. He allegedly sustained bodily injury as the result of a fall on the premises and brought suit here *555 (his wife joining per quod) to recover damages from defendant. Service of a copy of the summons and complaint was effected by forwarding the same to defendant at his New York address by certified mail, return receipt requested.
The affidavit filed in behalf of defendant is essentially worthless. It does no more than relate his ownership of the motel, the occurrence of the accident there, and the resultant suit and service of process. It is not disputed, however, that the motel was listed at the time of these events (and may still be) in the accommodations section of the Northeastern Tours Book, a publication of the American Automobile Association (AAA), which contains travel information relating to New York and the New England states. According to the explanatory material in the book, AAA field representatives search for accommodations and restaurants which meet the association's requirements for recommendation to its membership. Apparently one out of seven satisfies the standards. Every approved accommodation is then listed in a tour book (a number are published, each for a different section of the United States) under the nearest city or community, together with its location, a description of the facilities, and the AAA rating of good, very good, excellent or outstanding.
In addition to being listed, those selected become eligible for the association's "Official Appointment Service," which, for a "modest annual fee," entitles them to display the emblem on the premises and to use it in advertising. The emblem is also placed alongside the listing in the tour book. In return, rates and services must be guaranteed to AAA members.
The motel here involved was an "officially appointed" accommodation, as indicated by the AAA emblem next to the listing. It is to be noted, however, that the motel was one of a number grouped alphabetically under the caption "Lake George." All those on the tour book page in the record before us display the emblem. Since the list is obviously incomplete, one cannot tell whether there are others that do not.
*556 It appears, further, that an establishment may purchase advertising space in the book for the further exposition of its facilities. Defendant here had no such advertisement in the tour book at the time here in question.
Plaintiff, an AAA member, alleged in his affidavit that he first became aware of defendant's motel by reason of its listing in the annual Northeastern Tour Book, a copy of which he received each Spring. He said further that upon inquiry at the Florham Park, New Jersey, office of AAA he was told that other members had used the accommodation and found it satisfactory. He added that as a result "of the aforesaid listing in AAA Tour Book as an approved establishment and my further inquiry and literature on defendant establishment, I was persuaded to use this accommodation."
My colleagues find from these facts "advertising" by the plaintiff which is "substantially more than a solicitation of business," and which "does indeed exceed the `minimal contact' necessary for longarm jurisdiction." Their concept seems to be that the listing is an advertisement which is inserted in the tour book by the establishment itself. It is not. As indicated earlier, it is the AAA which determines for the information and convenience of its members which accommodations are to be listed. The listing is an assurance by the AAA that the accommodation is the one out of every seven which, after inspection, meets AAA's high standards. It is not, however, a guarantee of the published rates and services.
Such listing is separate and distinct from, and not dependent upon, the purchase of the optional privilege of displaying the AAA emblem alongside the listing and generally in the establishment's advertising. It is the acquisition and display of the emblem which constitutes a guarantee of rates and services. But it does not appear that every establishment listed in the tour book also displays the emblem.
I hasten to add that these comments are in no way intended to be dispositive of the case. They merely place the facts in a clearer and more accurate perspective. The issue remains *557 the same. Specifically, it is this: Where an informational booklet such as the one here involved, covering a geographic area not including New Jersey (but available here) is published by a national automobile association for the convenience of its members, and contains a listing of recommended motels and other accommodations, some of which are permitted to display the association's recognized symbol, and a New Jersey resident, presumably (in this case) planning a vacation trip to a resort area in the State of New York, consults the publication and selects a particular motel in that place from among those listed displaying the AAA emblem, and sustains an injury while a guest at that motel, does the motel on these facts have sufficient minimum contacts with this State to support long-arm service of process in connection with a suit for damages instituted by the injured person in this jurisdiction?
The majority is of the view that there such minimum contacts with this State do exist. But if one strips from their opinion such self-serving and hyperbolic phrases as "persuasive attraction of the advertising," "enhanced by the affirmative endorsement and guarantee of the prestigious American Automobile Association," "seductive advertising," and the like, what remains is the concept that jurisdiction vests "where, as here, the advertising was by its very nature intended to and did cause `effects' in this State," citing Restatement, Conflict of Laws 2d, § 37 at 156 (1971). I find no support for this conclusion either in the facts of the case or in applicable law. The majority's reliance on Avdel Corp. v. Mecure, supra, is misplaced. In fact, it clearly points the other way.
In Avdel defendant, a resident of New York, ordered rivets from plaintiff, a New Jersey corporation. The subsequent lawsuit was to recover an amount allegedly due on a book account for materials sold and delivered. The affidavits submitted by plaintiff in opposition to defendant's motion "to dismiss the complaint for lack of in personam jurisdiction" disclosed that defendant entered this State to discuss *558 his contract with plaintiff, and that he and members of his family travelled to plaintiff's plant in New Jersey to return many of the rivets which had been purchased. The court had no difficulty
* * * in holding defendant amenable to suit in this state since he ordered a product which he knew would have substantial business effects in this state, and followed up his order with numerous contacts here in relation to that contract. In other words, he purposefully availed himself of the opportunity to engage in a commercial transaction involving activities in this state. See Hanson v. Denckla, supra, 357 U.S. at 253, 78 S.Ct. at 1239, 2 L.Ed.2d at 1298. * * * [58 N.J. at 273]
The court's approach in Avdel was a recognition of the principle that "a nonresident defendant who is not doing business in a state in the traditional sense may nonetheless be amenable to suit in that state where he enters into a contract which will have significant effects in that state [emphasis supplied]." 58 N.J. at 272. See McGee v. International Life Ins. Co., 355 U.S. 199, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); cf. J.W. Sparks & Co. v. Gallos, supra. See also Trustees Structural Steel v. Huber, 136 N.J. Super. 501, 506 (App. Div. 1975), certif. den. 70 N.J. 143 (1976); Govan v. Trade Bank & Trust Co., 109 N.J. Super. 271, 274 (App. Div. 1970); Resin Research Lab., Inc. v. Gemini Roller Corp., 105 N.J. Super. 401, 404 (App. Div. 1969); Unicon Investments v. Fisco, Inc., 137 N.J. Super. 395, 403 (Law Div. 1975).
I do not mean to imply that subjecting a nonresident to the jurisdiction of our courts through long-arm service of process is limited to that which results from a contract. The expanding law on the subject embraces far more than that. The cases, however, are so varied in nature and scope that a detailed examination of each would require an unnecessary expenditure of time and effort. Illustratively, however, sufficient minimum contacts have been found in these instances: out-of-state manufacture of truck bodies to be installed on chassis where normal usage would almost inevitably *559 bring the product into this State (Roche v. Floral Rental Corp., 95 N.J. Super. 555 (App. Div. 1967)); receipt by clinical pathologists' society based in Illinois of application for certification from New Jersey residents, publishing technical bulletin, and conducting examinations here (Higgins v. American Soc. of Clinical Pathologists, 94 N.J. Super. 243 (App. Div. 1967), rev'd on other grounds 51 N.J. 191 (1968)); shipment of goods into New Jersey which were purchased here by a New Jersey resident but caused injury in Connecticut to a Connecticut resident (Roland v. Modell's Shoppers World of Bergen Cty., supra); personal injury negligence action arising out of collapse of patio deck against owner-builder who had sold house to plaintiff and then moved out of the State (Egan v. Fieldhouse, 139 N.J. Super. 220 (Law Div. 1976)); action against German manufacturer for injuries from allegedly defective printing press sold to an independent New Jersey distributor and then sold to plaintiff's employer (Certisimo v. Heidelberg Company, 122 N.J. Super. 1 (Law Div. 1972), aff'd sub nom. Van Eeuwen v. Heidelberg Eastern, Inc., 124 N.J. Super. 251 (App. Div. 1973)); injury to plaintiff in swimming pool accident when defendant, a nonresident, jumped from a diving board, where sole contact with this State was defendant's visit here at the time (Knight v. San Jacinto Club, Inc., 96 N.J. Super. 81 (Law Div. 1967)); where Michigan distributor of diesel engines manufactured by an Indiana corporation installed one in Michigan in a tractor owned by a New Jersey resident, and the engine exploded while the vehicle was in this State, injuring the driver, long-arm service on the Michigan corporation was sufficient, it appearing that there was a distributor of the engines in New Jersey with which it had frequent dealings (Hoagland v. Springer, supra.)
In each of the cited cases the facts met the applicable standards summarized in Note 47 Geo. L.J. 342 (1958), and referred to in Hoagland v. Springer, supra, 74 N.J. Super. at 280-281: (1) the nonresident defendant must do some act or consummate some transaction within the forum, *560 and a single event will suffice if its effects within the State are substantial enough to qualify under the third standard; (2) the cause of action must be one which arises out of, or results from, the activities of the defendant within the forum; (3) the assumption of jurisdiction based upon such minimum contact must be consonant with the due process tenets of "fair play" and "substantial justice," and must be reasonable. Moreover, in the case of acts done elsewhere, the above rationale is consistent with the principle enunciated in Restatement, Conflict of Laws 2d, § 50 at 178 (1971) ("Foreign Corporations  Causing Effects in State by Act Done Elsewhere").[4]
A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable.[5]
*561 I am thoroughly satisfied, in the light of the foregoing, that the facts of the case before us do not support the attempted long-arm service of process. Defendant's only "contact" with this State  if it amounted to that  was its listing in the tour book coupled with the appended AAA emblem. There was no evidence here of any direct communication with or solicitation of any specific guests in New Jersey. The purported "advertising" was a peripheral occurrence, the nature and quality of which did not constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." Cf. Scheidt v. Young, 389 F.2d 58 (3 Cir.1968). The proofs reveal only that plaintiff saw defendant's establishment among those listed and, ostensibly because of the AAA emblem, decided to go there. This is hardly the kind of "effect" contemplated by the Restatement or any of the cited cases.
By way of contrast, in Schaffer v. Granit Hotel Inc., 110 N.J. Super. 1 (App. Div. 1970), the female plaintiff, a paying guest at defendant hotel in New York State, was injured while using a toboggan run maintained by the hotel. After she returned to her home in New Jersey she instituted suit, service of process upon the defendant being accomplished by sending a copy of the summons and complaint by registered mail to defendant at its place of business. The trial judge granted defendant's motion to "dismiss the complaint" on the *562 ground that sufficient minimum contacts with this State had not been disclosed. This court reversed the resultant judgment. These facts were noted: Plaintiffs had made their reservations at the hotel through their local Jewish Center, which had a contractual arrangement with the hotel to take groups of people there for winter weekends. The hotel had similar arrangements with 30 to 40 New Jersey Centers. In addition, it advertised in a Newark paper and also in New York papers circulating in this State. We correctly held that this economic entry into this State, coupled with the hotel's continued advertising campaign and its solicitation of business from our residents, constituted sufficient "`contact' to comport with the requirements of due process." Moreover, defendant by its actions purposefully availed itself of the privilege of conducting activities within this State, thus invoking the benefits and protection of its laws. 110 N.J. Super. at 5. Cf. Amercoat Corp. v. Reagent Chem. & Research Inc., 108 N.J. Super. 331, 334 (App. Div. 1970).
A situation comparable to Schaffer was involved in Oliff v. Kiamesha Concord, Inc., supra. There suit was instituted in behalf of the infant plaintiff to recover damages for personal injuries sustained by her while she and her parents were paying guests at defendant's hotel located at Kiamesha Lake, New York. Defendant moved unsuccessfully to set aside the long-arm service of process upon it. The proofs disclosed that defendant maintained direct communication with its guests, whether initiated by its own advertising or through a travel agency, "directly soliciting the specific New Jersey resident from time to time, and in the very case at bar succeeded in persuading return visits upon receipt of a deposit directly from the guest." The trial court had no difficulty concluding "that `The Concord' availed itself of the privilege of conducting activities in this State directly to its intended guest and also through travel agents to whom it paid commissions." 106 N.J. Super. at 125.
*563 In my view, the thread purporting to link defendant in this case to New Jersey was too tenuous to constitute a "minimum contact" sufficient to support the long-arm service of process. As noted above, it was not one whereby defendant purposefully availed itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, supra. I would, therefore, modify the order below so as to set aside the service of process only, and, as modified, affirm it.
NOTES
[1] Precisely the same rule applies with respect to corporations. Restatement, Conflict of Laws 2d, § 50 at 178 (1971).
[1] Although the point was not raised below or on this appeal, it is important to note that the challenge was to the adequacy of the service of process, not to the sufficiency of the complaint; consequently, defendant's motion should properly have been to set aside the service of process, not to dismiss the complaint. See Cooke v. Yarrington, 62 N.J. 123, 127 (1973).
[2] If the form of substituted service provided for such cases and employed is reasonably calculated to give a defendant actual notice of the proceedings and an opportunity to be heard, "the traditional notions of fair play and substantial justice * * * implicit in due process are satisfied." Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). The issue of notice and an opportunity to be heard does not arise here.
[3] This has been amplified in the Restatement, Conflict of Laws 2d to (1) doing business in the state (§ 35), (2) doing an act in the state (§ 36), and (3) causing an effect in the state by an act done elsewhere (§ 37). See §§ 47, 49 and 50, applicable to corporations. See also Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1340 (2 Cir.1972).
[4] A similar provision relating to individuals is contained in § 37.
[5] In Young v. Gilbert, 121 N.J. Super. 78 (Law Div. 1972), cited by the majority, long-arm service of process was effected by certified mail on the defendant King Pin Alleys, a bowling establishment, cocktail lounge and snack bar located in West Nyack, New York. Plaintiffs in the action were passengers in a car which was involved in a collision with another car in Demarest in Bergen County. The driver and owner of the other vehicle had been at the King Pin Alley earlier that night, where they imbibed a substantial quantity of beer. They were allegedly intoxicated when the collision occurred. It appeared that King Pin Alleys was frequented by many young persons from Bergen County (at that time (1969) the age limit for drinking alcoholic beverages was 18 in New York, but 21 in New Jersey). While the New York defendant purchased some supplies in this State and maintained life insurance coverage for its employees and officers through an insurance company here, the trial judge, on the motion to set aside the service of process, indicated that "such `contacts' in themselves may be insufficient for New Jersey to exercise jurisdiction in respect of the nonrelated cause of action." Nevertheless, he denied the motion, holding that "there do exist compelling reasons for holding this defendant King Pin Alleys, amenable to suit here * * * *" The rationale of the case seems to be (1) there was no special inconvenience to the defendant; (2) the establishment attracted New Jersey minors under 21; (3) the driver's negligent operation of the vehicle after leaving the tavern in an intoxicated condition was a reasonably foreseeable event; (4) the dangerous effects of the driving in New Jersey could easily have been anticipated, and (5), citing § 50 of the Restatement, Conflict of Laws 2d, "regardless of any other relationship of defendant" to this State, permitting plaintiffs to maintain the suit did not afford "traditional notions of fair play." This has no relevancy at all to the facts of the present case, nor can any pertinent rule of law be extracted therefrom. The concept there seems to have been the setting in motion in one state of a cause that results in injury in another. See Comment, "Conflicts of Laws  Tavern Owners Liability  Extraterritorial Effects," 14 Rutgers L. Rev. 618 (1960).