**UNITED STATES GOLF ASSOCIATION,**
**Plaintiff,**

v.

**U.S. AMATEUR GOLF ASSOCIATION, Defendant.**

Civ. A. No. 88–1937.

United States District Court,
D. New Jersey.

Aug. 5, 1988.

---

Robert L. Ritter, Cole, Scotz, Bernstein, Meisel & Forman, Hackensack, N.J., and Stephen M. Trattner, Washington, D.C., for plaintiff.

Henry Catenacci, Podvey, Sachs, Meanor & Catenacci, Newark, N.J., Ira M. Siegel and Eric S. Hyman, Blakely, Sokoloff, Taylor & Zafman, Los Angeles, Cal., for defendant.

## OPINION AND ORDER

POLITAN, District Judge.

Before the Court is plaintiff's motion seeking preliminary injunctive relief in order to protect itself against what plaintiff perceives to be irreparable injury, and to protect the golfing public against the confusion and deception that plaintiff asserts defendant has created and threatens to perpetuate. Also before the Court is defendant's motion to dismiss for lack of *in personam* jurisdiction or, in the alternative, transfer this action on the basis of improper venue. In disposing of the parties' motions, it becomes necessary to address only the issue of whether venue is proper in the District of New Jersey for the action brought by plaintiff.

Plaintiff, United States Golf Association, also known as the USGA, is the governing body of amateur golf in the United States, providing a variety of services to and for amateur golfers. On April 29, 1988 plaintiff filed a Complaint in this Court against defendant pursuant to the Federal Trademark Act of 1946 (commonly known as the Lanham Act) for federal service mark infringement arising out of defendant's use of the trade name "U.S. Amateur Golf Association" and its abbreviation "USAGA". Defendant has been in business for several months and offers what it refers to as a service which is essentially a networking system for golfers. In an attempt to solicit business, defendant mailed from California over 1,400 promotional packages, consisting primarily of literature describing the services rendered by defendant. Of the 1,400 promotional packages, 22 were sent to parties in New Jersey. Defendant is neither a resident nor a corporation of New Jersey. Defendant is a resident of Los

Angeles, California within the jurisdiction of the United States District Court for the Middle District of California. Defendant has conducted no business in New Jersey nor has any employee or other representative of the partnership entered New Jersey. The partnership owns no assets of any kind outside of Los Angeles, California. No business has been conducted as a result of the distribution of the 22 promotional packages to New Jersey.

█ In measuring an application for a preliminary injunction, the Court must first determine if plaintiff has adequately set forth jurisdiction and venue when it is challenged. Plaintiff argues that prior to deciding whether plaintiff is properly in federal court, and/or in the correct district, that this Court must decide the motion for a preliminary injunction. The cases plaintiff cites for this proposition are not persuasive, nor has my research uncovered authority to support plaintiff's contention. In fact, the cases suggest the opposite result. *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901 (8th Cir.1987); *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.*, 760 F.2d 312 (D.C.Cir.1985); *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208 (3rd Cir.1984). In these cases, preliminary injunctions issued by District Courts were vacated by the Court of Appeals because the District Courts had erred in not first establishing whether or not venue was properly placed in the respective District Courts where the actions were initiated. As noted in *Maybelline*, "... [a]n appeal from an order granting or refusing injunctive relief pursuant to 28 U.S.C. § 1292(a)(1) presents for appellate review 'the entire order, not merely the propriety of injunctive relief.' * * * Therefore, the district court's denial of the motion to dismiss for improper venue is properly before us." 813 F.2d 901, 903, footnote 1.

This Court is satisfied that it has personal jurisdiction over defendant. "A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Provident National Bank v. California Federal Sav-*

*ings & Loan Association*, 819 F.2d 434, 436 (3rd Cir.1987) (quoting Fed.R.Civ.P. 4(e)). New Jersey Court Rules *R.* 4:4–4(c)(1) provides for service "consistent with due process of law." The New Jersey long-arm statute is intended to confer jurisdiction to the fullest extent under the Constitution. *See Avdel Corp. v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207 (1971). Therefore, the standards of the Fourteenth Amendment apply.

█ Decades ago, the United States Supreme Court held that the exercise of personal jurisdiction comports with due process if the non-resident defendant has such contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Supreme Court has subsequently defined and redefined the prerequisites of *in personam* jurisdiction. In *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Court explained the now familiar requirement of purposeful availment:

> [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* at 253, 78 S.Ct. at 1239–40. Nor is the fact that a defendant's acts may have effects within the forum state alone sufficient to confer jurisdiction. Rather, defendant must reasonably anticipate being summoned to respond in the forum court. *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The Supreme Court recently had occasion to review the due process personal jurisdiction inquiry. In *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985), the Court stated that: "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" [Citations omitted.]

■ The Third Circuit has further elaborated on the methods by which a plaintiff may demonstrate the factual basis giving rise to jurisdiction. Plaintiff must prove either that defendant's actions gave rise to the cause of action being sued upon (specific jurisdiction), or that defendants have 'continuous and systematic' contacts with the forum (general jurisdiction). *Provident, supra* at 437.

The standard for specific *in personam* jurisdiction has been set out in the case of *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The Supreme Court held that California properly asserted jurisdiction over defendant, noting "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." *Id.* at 223, 78 S.Ct. at 201. The Court observed that "[w]ith this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines." *Id.* at 223, 78 S.Ct. at 201. New Jersey courts have also found that direct mail solicitation has been held to confer personal jurisdiction "beyond doubt" over a non-resident defendant. *Kugler v. Market Development Corp.*, 124 N.J.Super. 314, 318, 306 A.2d 489 (Ch.Div. 1973).

It has been held that in cases involving trademark infringement, the wrong takes place where the "passing off" occurs. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.1956), *cert. denied* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *Hertz System, Inc. v. Hervis Corp.*, 549 F.Supp. 796 (S.D.N.Y.1982); *Scott Paper Company v. Scott's Liquid Gold, Inc.*, 374 F.Supp. 184 (D.Del.1974). The Court in *Scott* analogized a trademark claim to libel cases and held that the trademark claim

arises wherever injury from the infringing advertisement occurs. *Id.* at 190, footnote 6.

■ Jurisdiction may also be conferred over non-residents in tort cases based upon a single deliberate contact with New Jersey where that contact resulted in the alleged injury. *Starline Optical Corp. v. Caldwell*, 598 F.Supp. 1023, 1025 (D.N.J.1984); *Blessing v. Prosser*, 141 N.J.Super. 548, 359 A.2d 493 (App.Div.1976); *Beshada v. Johns–Manville Corp.*, 182 N.J.Super. 376, 440 A.2d 1372 (Law Div.1981); *Beckwith v. Bethlehem Steel Corp.*, 182 N.J.Super. 376, 440 A.2d 1372 (Law Div.1981). This result is consistent with the *Hanson v. Denckla, supra*, decision adopted by the New Jersey courts, that a voluntary action which is calculated to have an effect in the forum state is sufficient to confer personal jurisdiction upon the defendant. *Certisimo v. Heidelberg Company*, 122 N.J.Super. 1, 8, 298 A.2d 298 (Law Div.1972), *affirmed* 124 N.J.Super. 251, 306 A.2d 79 (App.Div.1973).

■ The Court concludes from the preceding analysis that defendant's deliberate attempt to enter, advertise and promote itself in New Jersey by direct mail solicitation is sufficient to confer specific personal jurisdiction over defendant. However, the Court finds, for the following reasons, that venue in New Jersey is inappropriate.

Venue is proper only in the judicial district where all defendants reside, or in which the "claim arose". The statute controlling venue, 28 U.S.C. § 1391, provides in pertinent part:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Thus, unless it can be held that the claim arose in the District of New Jersey, venue is improper here.

The leading case on the question of where a claim arose for purposes of venue is *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). Pertinent to our discussion here,

the Court in *Leroy* found that "[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial. (Footnote omitted.) For that reason, Congress has generally not made the residence of the plaintiff a basis for venue in nondiversity cases." *Leroy*, at 183–184, 99 S.Ct. at 2716–17. This provision, the Court found, was designed to alleviate "venue gap", and therefore, in a situation where this does not exist, one is not to "read it [the statute] more broadly on behalf of plaintiffs." *Id.*

Referring to a situation where it is not clear that the claim arose in one specific district, the Supreme Court stated that the broadest interpretation of the "claim arose" standard was:

> that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim. *Leroy* at 185, 99 S.Ct. at 2717.

In *Noxell v. Firehouse No. 1 Bar–B–Que Restaurant*, 760 F.2d 312 (D.C.Cir.1985), defendant sold its allegedly infringing product to the general public in the District of Columbia. Basing its decision on policies underlying the venue statute, such as the convenience of the witnesses and accessibility of evidence, the Court held that venue was improperly placed in the District of Columbia, holding that venue was proper in California, even though the allegedly infringing product was "passed off" in another district, stating that "[v]enue limitations generally are added by Congress to insure a defendant a fair location for trial and to protect him from inconvenient litigation." *Noxell* at 316.

In accord with the approach expressed in *Leroy* and *Noxell* is *J. Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399 (7th Cir.1987), where the Court held that the venue for an alleged Lanham Act violation was proper in Northern District of Illinois even though there were no sales of the aerosol cans with the alleged infringing artwork on them in Illinois. In *Walker* the Court considered both the accessibility of evidence, recognizing the fact that the majority of relevant documentary evidence would be in Northern Illinois (business records, copies of correspondence, etc.), and the fact that Northern Illinois was where the artwork was actually applied to the cans. *Id.* at 406.

*Scott Paper Co. v. Nice–Pak Products, Inc.*, 678 F.Supp. 1086 (D.Del.1988), also follows the guidelines set forth in *Leroy* for establishing proper venue in an infringement action.

> Nice–Pak is a New York corporation with its headquarters in Orangeburg, Rockland County, New York. The management decisions regarding trade dress of all Nice–Pak products are made at the headquarters in Orangeburg. Scott Paper concedes that the witnesses for Nice–Pak are located in Orangeburg. Consequently, it appears that Orangeburg is a center for the alleged infringing activities at issue here.

> While it may be possible that there is another district which would be equally plausible as a locus of the claim, Delaware is not it. Though some of plaintiff's witnesses and evidence are located in Delaware, Nice–Pak's witnesses are located in Orangeburg, New York. The few documents required so far in this litigation originated in New York, though some have been transferred to Delaware. The third factor set forth in *Leroy*, the convenience of the defendants, unquestionably weighs in favor of New York. In sum, this Court cannot say that it is equally plausible that this claim arose in Delaware. Accordingly, plaintiff cannot choose Delaware as a district in which the claim arose under 28 U.S.C. § 1391(b).

In evaluating the equities and convenience of litigation, the Court considers significant the residence of the defendant partnership and its partners in Los Ange-

les, California, the location of the documentary evidence in California, as well as the relative conveniences of the witnesses and the parties. The Court also notes that plaintiff in this action, United States Golf Association, is not a small New Jersey oriented company, but rather is one of nationwide, if not international, significance in the world of golf. As such, it would appear to impose no burden upon plaintiff to litigate in California as distinguished from New Jersey.

To put it in golfers' jargon, the tee for defendant's alleged violation of plaintiff's trademark was located in the Middle District of California. The spray of its promotional drive permeated the United States. There were 1,400 solicitations mailed from the defendant partnership which is located in Los Angeles, California, 22 of which reached New Jersey. Whether the 22 solicitations in New Jersey constituted errant drives or perfectly placed drives, is unimportant. They are out of bounds. The Court must defer to the place of origin.

IT IS HEREBY ORDERED THAT:

1) DEFENDANT'S MOTION TO TRANSFER THIS ACTION FOR IMPROPER VENUE IS GRANTED;

2) THE CLERK OF THE COURT IS DIRECTED TO TRANSFER THE FILE IN THIS CASE TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF CALIFORNIA.