JANET L. HIGGINS, PLAINTIFF-APPELLANT, v. AMERICAN
SOCIETY OF CLINICAL PATHOLOGISTS, DEFENDANT-
RESPONDENT.

Argued December 18, 1967—Decided February 5, 1968.

*Mr. Coleman T. Brennan* argued the cause for plaintiff-appellant.

*Mr. John D. Conner,* of the District of Columbia Bar, argued the cause for defendant-respondent (*Messrs. Shanley & Fisher,* attorneys; *Messrs. Sellers, Conner & Cuneo,* of the District of Columbia Bar, of counsel).

The opinion of the court was delivered by

PROCTOR, J. By this action plaintiff, Janet L. Higgins, seeks to compel the defendant, American Society of Clinical Pathologists (ASCP), to recertify her as a professionally qualified medical technologist and to reinstate her name in its registry of certified medical technologists. In her complaint plaintiff asserts that the rules of ASCP under which it denied recertification to her are contrary to the public policy of the State of New Jersey and therefore can provide no valid basis for the denial. The defendant moved to quash the service of process upon it and to dismiss the complaint on the grounds of lack of jurisdiction, insufficiency of service, and *forum non conveniens.* The trial court denied the motion. After filing its answer, defendant moved for a dismissal of the complaint as failing to state a cause of action and alternatively for summary judgment. Relying upon the affidavits of the parties, plaintiff's answers to interrogatories, and her deposition, the trial court held in favor of the defendant. The plaintiff appealed from the adverse judgment and the defendant cross-appealed from the order denying its motion to dismiss on jurisdictional grounds. The Appellate Division affirmed the trial court in all respects, holding that the court had jurisdiction over the defendant but that there existed no genuine issue as to any material fact and the defendant was entitled to summary judgment.

94 *N. J. Super.* 243 (*App. Div.* 1967). On plaintiff's petition we granted certification. 49 *N. J.* 367 (1967).

ASCP is a non-profit corporation of the State of Colorado whose membership is composed primarily of physicians specializing in pathology. Its purposes, as set forth in its constitution, are:

"* * * (a) to promote the practice of scientific medicine by a wider application of pathology to the diagnosis and treatment of disease, (b) to stimulate research in all branches of pathology, (c) to establish standards for performance of various laboratory procedures, (d) to elevate the scientific and professional status of those specializing in this branch of medicine, and (e) to encourage closer cooperation of pathologists with other physicians and with medical technologists."

In furtherance of these aims ASCP has created, as one of its standing committees, a Board of Registry which maintains a Registry of Medical Technologists. The Board receives applications from persons for listing in the Registry as certified medical technologists, passes on their qualifications, conducts examinations, and issues certificates and annual renewals of registration to those persons meeting the requirements. Technologists certified by ASCP may designate their professional status by the use of the initials M. T. (ASCP) after their names. In connection with its program of certification, the Board has established educational and training requirements which include completion of a prescribed course of studies at an accredited school. The Registry charges an original application fee of $20.00 and a renewal charge of $3.00 annually. The record shows that the Registry is "recognized by the leading medical and hospital groups as the only authoritative qualifying body for this field" of medical technology.[1]

---

[1] The brochure distributed by the Registry gives the following information:

"Through its efforts to standardize the training of medical technologists, the Registry has come to be recognized by the leading medical and hospital groups as the only authoritative qualifying body for

The Board of Registry has promulgated a Code of Ethics and Standards of Conduct which are to govern the professional life of a registered medical technologist. Among other provisions, the Standards of Conduct contains the following rules.

"A medical technologist will work at all times under the direction or supervision of a pathologist or other duly qualified and licensed doctor of medicine, such qualifications being determined on the basis of accepted medical ethics.

\* \* \* \* \* \* \*

"A medical technologist will not act as owner, co-owner, advisor or employee, or by means of any subterfuge, participate in an arrangement whereby an individual not regularly licensed to practice medicine is enabled to own or operate a laboratory of clinical pathology."

Plaintiff, Janet L. Higgins, in June 1963 received a B.S. degree in medical technology from Rider College after completing a Registry approved period of hospital training at Mercer Hospital in Trenton. That year, upon passing the examination conducted by the Board of Registry, she was certified as a medical technologist and her name was listed in the Registry. She obtained a position as a technologist at Mercer Hospital and in 1964, while so employed, received the annual renewal of her certificate.

this field. It has elevated the status of the medical laboratory worker to a high professional level, by gradually raising the educational requirements and broadening and improving the technical training. The requirements established by the Registry are recognized by such medical organizations as the American Medical Association, the Canadian Medical Association, the American College of Surgeons, the American College of Physicians, the American Hospital Association, the Catholic Hospital Association, and by pathologists, other physicians and hospital superintendents. Therefore, it is well for young people planning to enter this field to take cognizance of these requirements. In their periodic visits to hospitals, staff representatives of the American College of Surgeons, the American Hospital Association and the American Medical Association, who are also field representatives of the Joint Commission on Accreditation of Hospitals, carefully observe whether the workers in the clinical laboratories have Registry certificates. The Registry, therefore, while purely voluntary and non-coercive, is universally accepted as the authoritative organization for qualifying the medical technologists in the United States."

In May 1964, the plaintiff left her position at Mercer Hospital to accept her present employment at Egan Laboratories, where her salary and working hours were better than they had been at the hospital. Egan Laboratories is an independent bio-analytic laboratory located in Trenton. Its director, although not a physician, is duly licensed by the State of New Jersey pursuant to the Bio-Analytical Laboratory and Laboratory Director's Act (*N. J. S. A.* 45:9-42.1 *et seq.*), which provides that the licensed director exercise "direct and constant supervision" over the laboratory's operations.[2] Nevertheless, because the laboratory operation is not supervised by a pathologist or other duly qualified and licensed doctor of medicine, plaintiff's employment conflicts with the proscription contained in the ASCP Standards of Conduct quoted above. For this reason, ASCP's Board of Registry refused to renew the plaintiff's certification for 1965. The plaintiff was aware that her acceptance of employment at Egan Laboratories violated the ASCP Standards and Code and that this violation would result in the loss of her certification. There is no contention that ASCP, in refusing plaintiff's recertification, departed from its rules or from procedural fairness.

In this Court defendant continues to press its argument that the court lacked jurisdiction over ASCP, that service of process was insufficient, and that the doctrine of *forum non conveniens* should be applied. For the reasons set forth by the Appellate Division, 94 *N. J. Super.*, at *pp.* 248-251, we conclude that these contentions lack merit.

Thus the Court is faced with only two issues: (1) Whether there exists any basis for judicial intervention in this intraorganizational dispute—that is, whether plaintiff has an

---

[2] *N. J. S. A.* 45:9-42.18 provides:
"Each bio-analytical laboratory shall be under the direct and constant supervision of either
(a) a person licensed to practice medicine and surgery in the State of New Jersey, or
(b) a licensed bio-analytical laboratory director."

interest sufficient to warrant judicial action; and (2) whether, if such an interest exists, it has been subjected to an unjustifiable interference by the defendant. See generally, *Hurwitz v. Directors Guild of America, Inc.,* 364 *F.* 2d 67, 72 & n. 6 *(2d Cir.),* certification denied, 385 *U. S.* 971, 17 *L. Ed.* 2d 435 (1966).

## I

Plaintiff asserts in her complaint that ASCP and its Board of Registry exercise monopolistic control over the profession of medical technology. On the basis of plaintiff's deposition, affidavit, and answers to interrogatories, the courts below concluded, and we agree, that this assertion of monopoly could not be sustained and therefore no genuine issue of fact existed as to this matter. Plaintiff admitted that she had suffered no present economic loss as a result of the termination of her certification. She conceded that there had been no requirement at Mercer Hospital, her former place of employment, that a medical technologist be certified by defendant, nor did she know of any hospital having such requirement. The Appellate Division viewed the theory of plaintiff's case as being based solely upon the factual patterns of *Falcone v. Middlesex Co. Medical Soc.,* 34 *N. J.* 582 (1961) and *Greisman v. Newcomb Hospital,* 40 *N. J.* 389 (1963).[3] Because of the absence of an economic necessity for membership as a *sine qua non* to employment or advancement, as existed in those cases, the Appellate Division concluded that there was no basis for judicial intervention. 94 *N. J. Super.,* at *pp.* 255–257.

However, plaintiff contends that her cause of action goes beyond the principles of *Falcone* and *Greisman.* She asserts

---

[3] In *Falcone,* this Court held that public policy forbade the unreasonable exclusion of an osteopathic physician from a county medical society where the use of hospital facilities was limited to society members. In *Greisman,* this Court ordered a private hospital receiving public benefits, which had a virtual monopoly in its area, to admit to its staff an osteopathic physician not admitted to the county medical society.

that "the primary injury which she has sustained as a result of defendant's action relates to her professional identity, reputation and status, and such unforeseeable affects therefrom on her future career in the field of medical technology."

█ In the present case we do not believe that, in order to obtain relief, the plaintiff must show an injury resulting from the economic necessity for membership in an organization exercising monopolistic control. Here, the plaintiff seeks reinstatement of her pre-existing membership rather than, as in *Falcone* and *Greisman*, admission to an organization which has refused to admit initially. The courts have emphasized the distinction between reinstating an expelled member and ordering the admission of an applicant in the first place. While the general rule is that courts will not compel admission of an individual into a voluntary association, they have been willing to intervene and compel the reinstatement of a member who has been wrongfully expelled: "The law accords important rights and status to members of voluntary organizations not extended to mere aspirants to membership therein." *Trautwein v. Harbourt,* 40 *N. J. Super.* 247, 259 (*App. Div.*), certification denied, 22 *N. J.* 220 (1956). See *Joseph v. Passaic Hospital Ass'n,* 26 *N. J.* 557, 569 (1958); *Sibley v. Board of Management Carteret Club of Elizabeth,* 40 *N. J. L.* 295, 297 (*Sup. Ct.* 1878); *Hurwitz v. Directors Guild of America, Inc., supra,* at *pp.* 71–72; *Annot., Professional Society—Membership,* 89 *A. L. R.* 2d 964, 966 (1963). See also *Falcone, supra,* at *p.* 590 and cases there cited.

█ The rights accorded to members of an association traditionally have been analyzed either in terms of property interests—that is, some interest in the assets of the organization, see *Annot., Professional Association—Expulsion,* 20 *A. L. R.* 2d 531, 566 (1951); or in terms of contract rights—that is, reciprocal rights and duties laid down in the constitution and bylaws, *Joseph v. Passaic Hospital Ass'n, supra,* at 569 (1958). See generally, Chafee, *The Internal Affairs of Associations Not for Profit,* 43 *Harv. L. Rev.* 993, *pp.*

999–1007 (1930); see also, Note, 7 *Vill. L. Rev.* 140, *pp.* 140–141 (1961). These theories, however, are incomplete since they often prevent the courts from considering the genuine reasons for and against relief (see, *e. g., Baird v. Wells,* 44 *Ch. D.* 661 (1890); *Rigby v. Connol,* 14 *Ch. D.* 482 (1880)), and have been extensively criticized. See, *e. g.,* Note, *Judicial Control of Actions of Private Associations,* 76 *Harv. L. Rev.* 983, *pp.* 998–1002 (1963); Note, 15 *Rutgers L. Rev.* 327, *pp.* 330–333 (1960). Leading commentators have pointed out that the real reason for judicial relief against wrongful expulsion is the protection of the member's valuable personal relationship to the association and the status conferred by that relationship. Chafee, *supra,* at *pp.* 1007–1010; Pound, *Equitable Relief Against Defamation and Injuries to Personality,* 29 *Harv. L. Rev.* 640, 668–682 (1916). *Cf.* Cox, *The Role of Law in Preserving Union Democracy,* 72 *Harv. L. Rev.* 609, 615 (1959). See also Note, 14 *W. Res. L. Rev.* 346, 353 (1963). As Professor Chafee has noted, "the wrong is a tort, not a breach of contract, and the tort consists in the destruction of the relation rather than in a deprivation of the remote and conjectural right to receive property." Chafee, *supra,* at *p.* 1007. See Note, 76 *Harv. L. Rev., supra,* at 1005. The loss of *status* resulting from the destruction of one's relationship to a professional organization ofttimes may be more harmful than a loss of property or contractual rights and properly may be the subject of judicial protection. *Cf. Tunney v. Orchard* [1955], 3 *D. L. R.* 15, 40–41 (*Manitoba Ct. App.*); Affeldt and Seney, *Group Sanctions and Personal Rights—Professions, Occupations and Labor Law,* 11 *St. Louis Univ. L. J.* 382, *pp.* 387–388 (1967). This State's highest court has recognized that personal rights, as distinguished from property or contractual rights, are a proper subject for judicial protection. In *Vanderbilt v. Mitchell,* 72 *N. J. Eq.* 910 (*E. & A.* 1907), the court held that the technical violation of complainant's property rights warranted judicial relief, but went on to say:

"If it appeared in this case that only the complainant's status and personal rights were thus threatened or thus invaded * * * we should hold, and without hesitation, that an individual has rights, other than property rights, which he can enforce in a court of equity and which a court of equity will enforce against invasion, and we should declare that the complainant was entitled to relief * * *." *Id.*, at p. 919.

Though it may be conceded that the plaintiff in the present case has suffered neither tangible economic loss nor any loss remediable under the traditional contract and property theories, we believe that her membership represented an interest of sufficient value to warrant judicial protection if it has been subjected to an unjust interference.[4] Certification of the plaintiff by ASCP conferred upon her the standing of a competent professional. Her membership in this professional society gave her recognition and status, two important elements of professional success. Note, 74 *Yale L. J.* 1313, n. 5 (1965). According to the defendant's pamphlet, quoted earlier in this opinion, the Registry "has elevated the status of the medical laboratory worker to a high professional level." From the record it is clear that the designation M. T. (ASCP) is the hallmark of competence in the field of medical technology. Plaintiff's status as a certificate holder imparts a certain cachet which distinguishes her from those non-certified laboratory workers who presumably are not as well trained or well qualified as is the plaintiff. Certification by ASCP and listing in its registry is the concrete and authoritative recognition of high professional attainment in the field. Because the Registry has come to be recognized by the leading medical and hospital groups as the only authoritative qualifying body for medical technologists, the certificate gives to its holder a valuable distinction. It is beyond doubt that plaintiff's

---

[4] Although we find it to be unnecessary to our decision, we note that plaintiff also alleges that her expulsion resulted in her no longer receiving bulletins from the defendant, and her being dropped from the American Society of Technologists and the New Jersey Society of Technologists.

standing in her profession has been impaired by the loss of this distinction. We conclude that the plaintiff's stake in her professional status is substantial enough to warrant at least limited judicial examination of the reason for her expulsion. See *Hurwitz v. Directors Guild of America, Inc., supra; Virgin v. American College of Surgeons,* 42 *Ill. App. 2d* 352, 192 *N. E. 2d* 414 (1963); Note, 6 *Washburn L. J.* 160, *pp.* 163–164 (1966). See also *Berrien v. Pollitzer,* 83 *U. S. App. D. C.* 23, 165 *F. 2d* 21 (1947).

## II

 In determining whether the deprivation of plaintiff's status was justified, our examination of the reason for her expulsion must be limited. Courts ordinarily ought not to intrude upon areas of associational decision involving specialized knowledge. See *Falcone, supra,* at *p.* 590; Note, 15 *Rutgers L. Rev. supra,* at *p.* 329; 14 *W. Res. L. Rev. supra,* at *p.* 346. See also Note, 75 *Harv. L. Rev.* 1142 (1962). Private associations must have considerable latitude in rule-making in order to accomplish their objectives and their private law generally is binding on those who wish to remain members. However, courts will relieve against any expulsion based on rules which are in conflict with public policy. *Hurwitz, supra; State ex rel. Waring v. Georgia Medical Society,* 38 *Ga.* 608, 95 *Am. Dec.* 408 (*Sup. Ct.* 1869); *Bernstein v. Alameda-Contra Costa Medical Ass'n,* 139 *Cal. App. 2d* 241, 293 *P. 2d* 862 (1956); *Firestone v. First District Dental Society,* 24 *App. Div. 2d* 268, 265 *N. Y. S. 2d* 525 (1965); *People ex rel. Gray v. The Medical Society of the County of Erie,* 24 *Barb.* 570 (*N. Y. Sup. Ct.* 1857); Note, 15 *Rutgers L. Rev., supra,* at *pp.* 334–335; Comment, 5 *Utah L. Rev.* 270, 272 (1957); *Annot.,* 20 *A. L. R. 2d, supra,* at *pp.* 546–548. See *Falcone, supra,* at *pp.* 589–590.

 We are satisfied that the ASCP rules asserted as a justification for plaintiff's expulsion conflict with the

public policy of this State and therefore can provide no proper basis for the refusal to renew her certification. The bioanalytical laboratory at which the plaintiff is employed is operated pursuant to a license granted by the State of New Jersey under *N. J. S. A.* 45:9–42.1 *et seq.* The grant of a license to a laboratory director found by the State Board of Medical Examiners to be qualified in compliance with this statute evinces a legislative policy determination that the operation of bioanalytical laboratories by qualified non-doctors, as well as by physicians, is in the public interest.

 Defendant's rules by their terms forbid a certified medical technologist to be an employee of a person not licensed to practice medicine, even though that person is duly licensed by the State to operate a bioanalytical laboratory. The readily apparent purpose of the rules is to place a non-physician in a position where he is not "enabled to own or operate a laboratory of clinical pathology." (See rules quoted, this slip opinion page 4). That the rules are aimed at eliminating laboratories owned or operated by non-physicians—rather than at elevating the standards and work performance of the certificate holder himself—is made apparent by the fact that the rules do not deny recertification to one who is engaged in work unrelated to the field. Moreover, if a medical technologist were employed by a laboratory which was supervised by—although not owned by—a licensed physician, the technologist apparently would be in contravention of the defendant's rules. Such employment would be "an arrangement whereby an individual not regularly licensed to practice medicine is enabled to *own* or operate a laboratory of clinical pathology." (Emphasis supplied.) The record shows that the best qualified medical technologists are those who have met the educational requirements of ASCP and have been certified by it. Defendant's restrictive employment rules have a logical tendency to deprive licensed bioanalytical directors who are not physicians of certified medical technologist employees, since the certified technologist can accept such employment only

at the loss of the professional status conferred by her ASCP certification. Not only do these rules detract from the exercise of the privilege granted to the director by his license, but more importantly, they tend to deprive the public of obtaining from these laboratories services of the highest quality and reliability as are scientifically possible. As noted above, the Bio-Analytical Laboratory and Laboratory Director's Act (*N. J. S. A.* 45:9–42.1 *et seq.*) authorizes the operation of clinical laboratories by licensed non-physicians. Such laboratories, of course, should be staffed by the best qualified technologists available. Any rule which restricts the availability of such technologists for work in this type of laboratory only can be viewed as being against the public interest and contrary to public policy.

## III

We therefore hold that, on the record before us, the professional status conferred on plaintiff by her certificate is an interest of sufficient substance to warrant the protection of the court, and that because the ASCP rules underlying the plaintiff's expulsion violate the policy of this State they can provide no valid basis for ASCP's refusal to recertify her.

Reversed and remanded to the Superior Court, Law Division, for proceedings consistent with this opinion.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—6.

*For affirmance*—None.