739 A.2d 1011 (1999)
325 N.J. Super. 512
Gary F. STOWELL, Sr., Plaintiff-Appellant,
v.
NEW JERSEY STATE ASSOCIATION OF CHIEFS OF POLICE, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1999.
Decided November 17, 1999.
*1012 Todd J. Gelfand, Haddon Hgts., for plaintiff-appellant (Helmer, Kassel & Stowell, attorneys; Mr. Gelfand, of counsel and on the brief).
Vito A. Gagliardi, Jr., Roseland, for defendant-respondent (Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, attorneys; Mr. Gagliardi, of counsel and on the brief).
Before Judges SKILLMAN, D'ANNUNZIO and NEWMAN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the State Association of Chiefs of Police (Association), which is composed of present and former chiefs of police, may expel a retired member who has become an attorney and now provides legal representation to municipalities that places him in an adversarial relationship with police chiefs. We conclude that plaintiff's expulsion from the Association is justifiable under these circumstances and therefore affirm the order dismissing his claim.
Plaintiff was formerly the Chief of Police of Winslow Township in Camden County. While he was a police chief, plaintiff was an active member of the Association. In 1990, plaintiff retired in order to engage in the practice of law. At that time, he became a retired member of the Association.
Plaintiff has been retained by a number of municipalities to provide legal services relating to the organization and operation *1013 of their police departments. This legal representation has placed plaintiff in an adversarial relationship with some chiefs of police. For example, he represented Westwood and Waterford Townships in connection with matters which resulted in the initiation of disciplinary charges against their Chiefs of Police. Plaintiff also was involved in an investigation of the Nutley Police Department, including its Chief of Police. In addition, he provided legal advice to the Borough of Carteret in connection with a police department reorganization, which apparently resulted in a reduction in the Chief of Police's powers.
On November 5, 1997, the Association informed plaintiff that his membership was "relinquish[ed]" because of his legal representation of "municipal entities or officials which usurp or threaten to usurp the authority of chiefs of police."
Plaintiff brought this action to compel the Association to reinstate him. Plaintiff claimed that the Association had violated its own constitution and bylaws as well as the due process guarantees of the United States and New Jersey Constitutions in suspending him. Plaintiff also claimed that his suspension violated public policy and infringed upon the Supreme Court of New Jersey's exclusive authority to regulate the practice of law under N.J. Const., art. VI, § 2, ¶ 3.
The case was brought before the trial court on cross motions for summary judgment. The trial court concluded that plaintiff's activities as an attorney were not prohibited by the section of the Association's constitution under which his membership was suspended. However, the court also concluded plaintiff's membership could be "revoked" under another section of the Association's constitution, which authorizes "revocation of ... membership, when in the executive committee's judgment the conduct or action of the member are not in the best interests of the Association." The court rejected plaintiff's argument that his expulsion from the Association would violate public policy.
Subsequent to the entry of orders memorializing these rulings, the Association's executive committee adopted a resolution recommending the revocation of plaintiff's membership. The resolution stated that plaintiff "repeatedly and consistently seeks and obtains appointments to positions which require him to prosecute members of this Association, and to reduce the authority of, or eliminate, the office of chief of police in municipalities throughout New Jersey." The general membership approved this recommendation by a 91 to 1 vote. After that action was taken, plaintiff filed this appeal.
Plaintiff's sole argument on appeal is that his expulsion from the Association violates public policy. Consequently, there is no issue before us as to whether the Association's actions conformed with its constitution and bylaws. In addition, plaintiff has abandoned his constitutional claims.
"[A] private organization has a great interest in controlling its own affairs." Rutledge v. Gulian, 93 N.J. 113, 123, 459 A.2d 680 (1983). Therefore, such an organization ordinarily "may set its own membership qualifications and restrictions." Matthews v. Bay Head Improvement Ass'n, 95 N.J. 306, 327, 471 A.2d 355, cert. denied, 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984).
In reviewing a private organization's decision to discipline or expel a member, a court must ask: "(1) does the plaintiff have an interest sufficient to warrant judicial action, and (2) has that interest been subjected to an unjustifiable interference by the defendant?" Rutledge, supra, 93 N.J. at 118, 459 A.2d 680. To determine whether the organization's action is "unjustifiable," a court must weigh the "competing interests" of the member and the organization. Id. at 124, 459 A.2d 680. In addition, the court must consider whether there is any overriding public interest that requires judicial intervention. See Higgins v. American Soc'y of Clinical *1014 Pathologists, 51 N.J. 191, 238 A.2d 665 (1968); Zelenka v. Benevolent & Protective Order of Elks, 129 N.J.Super. 379, 324 A.2d 35 (App.Div.), certif. denied, 66 N.J. 317, 331 A.2d 17 (1974).
The Association's purposes, as expressed in its constitution, include securing "legislation and [other] government action for the general, official and personal welfare of [its] members" and "a closer official and personal relationship among Chiefs of Police...." Therefore, the Association has both professional and social purposes.
Although the Association serves professional purposes for its active members, plaintiff's interest as a retired member is primarily social. Plaintiff is presently engaged in the practice of law and has expressed no interest in again becoming a police chief. Consequently, he has no evident personal interest in the Association's efforts to secure "legislation and [other] government action for the general, official and personal welfare of [its] members." Moreover, plaintiff has no interest in any incidental professional benefits Association membership may provide, such as enhancing a police chief's opportunities to obtain a position in a larger community. Therefore, plaintiff has a lesser interest in continuing his Association membership than a person who currently occupies a police chief position.
On the other hand, the Association has a strong interest in barring membership by a person engaged in professional activities that conflict with its objectives. Plaintiff has undertaken legal representation of municipalities in connection with matters that place him in an adversarial relationship with police chiefs. For example, the Borough of Carteret retained plaintiff to draft a municipal ordinance that would subject its Chief of Police to the supervision of an "appropriate authority," in conformity with N.J.S.A. 40A:14-118. We note that issues concerning the allocation of responsibility for administration of police departments pursuant to N.J.S.A. 40A:14-118 have been a subject of continuing controversy between municipal governing bodies and chiefs of police. See, e.g., Falcone v. De Furia, 103 N.J. 219, 510 A.2d 1174 (1986); In re Hartmann v. Police Dept. of Village of Ridgewood, 258 N.J.Super. 32, 609 A.2d 61 (App.Div.1992). Consequently, it is understandable that the Association would consider an attorney who provides legal advice concerning this subject to be an adversary and would not want him to attend meetings at which active members discuss proposed legislation or participation in litigation that could affect their powers.
Plaintiff also has been retained by several municipalities to investigate and prosecute disciplinary charges against their police chiefs. The record indicates that at least one of those investigations became extremely contentious. Plaintiff sent a letter to the Nutley Chief of Police, which stated:
Your letter of July 1, 1997 further indicated that your "... response" to my questions in that matter will not be in chapter and verse, or in any way be in great detail, or words to that effect.... I hope that I am misreading your intent, but it appears to me that you intend to be less than forthcoming and completely candid and cooperative with my inquiry in regard to that matter.... Be advised that I intend to look into the "chapter and verse" of the entire incident involving Officer_____ and the propriety of management's response in regard to that matter. To facilitate my effort in that regard and by authority of the Director of Public Safety, you are hereby advised that it is your duty to provide me with the entire original internal affairs file, to be present and answer any and all questions that I may have in regard to that matter, and to make any and all persons and/or materials or documents available to me to facilitate my assessment of that matter and management's response to same. Any failure to cooperate would constitute a breach of duty and an act of insubordination *1015 and, as such, cannot and will not be tolerated.
Another letter from plaintiff to the Nutley Chief of Police exhibited a similar accusatory tone:
The only way that the Director of Public Safety can determine the efficacy, completeness and/or propriety of the efforts taken by you and members of your staff, is for us to evaluate the entire who, what, where, when, why and how of that internal affairs investigation. Any effort on your part to block that inquiry will not be tolerated. Accountability of police power in a democratic society applies across the board from the newest patrolman on the street to include the Chief of Police.
Even if all the statements in these two letters were warranted, it is understandable that the Association would feel that the continued membership of a person who directs these kind of hostile comments at an active member would not be conducive to "congenial social intercourse" within the organization. Rutledge, supra, 93 N.J. at 123, 459 A.2d 680 (quoting Developments in the LawJudicial Control of Actions of Private Associations, 76 Harv. L.Rev. 983, 991 (1963)); cf. Zelenka, supra, 129 N.J.Super. at 386, 324 A.2d 35 ("A member of a Republican club ... could not expect to be allowed by the courts to campaign for a Democratic candidate and nevertheless remain immune to expulsion from the club for cause.").
We next consider whether there is any overriding public interest that precludes the Association from expelling plaintiff. Plaintiff argues that his expulsion is "unjustifiable" because it undermines the public policy of the Rules of Professional Conduct to maximize the opportunity of clients to retain legal counsel of their choice. See Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 18, 607 A.2d 142 (1992). Plaintiff relies upon the statement in Higgins, supra, 51 N.J. at 202, 238 A.2d 665, that "courts will relieve against any expulsion based on rules which are in conflict with public policy." In Higgins, the American Society of Clinical Pathologists, composed primarily of physicians specializing in pathology, refused to renew plaintiff's certification as a "professionally qualified medical technologist" because she accepted employment in a laboratory operated by a non-physician. The Court observed that "[t]he readily apparent purpose" of the Society's rule prohibiting certification of any technologist employed by a non-physician "is to place a non-physician in a position where he is not `enabled to own or operate a laboratory of clinical pathology.'" Id. at 203, 238 A.2d 665. The Court found that this rule directly conflicted with the "legislative policy determination that operation of bioanalytical laboratories by qualified non-doctors, as well as physicians, is in the public interest." Ibid. The Court also stated that the Society's rule "tend[s] to deprive the public of obtaining from these laboratories services of the highest quality and reliability as are scientifically possible." Id. at 204, 238 A.2d 665. Therefore, the Court concluded that the rule was "against the public interest and contrary to public policy." Ibid.
There is no comparable overriding public interest that precludes the Association from expelling plaintiff. Plaintiff has not alleged that he would forego the opportunity to represent municipalities in connection with matters affecting police chiefs in order to regain his Association membership. But even if plaintiff declined to provide representation in such matters, this would not deprive municipal governments of competent legal counsel to prosecute and investigate disciplinary charges against police chiefs and to provide legal advice regarding compliance with N.J.S.A. 40A:14-118. Plaintiff is possibly the only member of the bar who is also a former police chief, and there are undoubtedly many other attorneys who are well versed in the areas of municipal law that involve potential conflict with police chiefs. Attorneys commonly have a variety of professional *1016 conflicts and personal reasons for declining to accept representation of certain potential clients. See, e.g., Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 220, 536 A.2d 243 (1988); Reardon v. Marlayne, Inc., 83 N.J. 460, 477, 416 A.2d 852 (1980). If plaintiff declined to provide representation in matters that would place him in an adversarial relationship with police chiefs, this would be simply a personal reason for him refusing to represent certain clients.
We also reject plaintiff's claim that the Association is equitably estopped from expelling him because it agreed that his membership would not be jeopardized so long as he did not personally sign administrative charges against a police chief. To support this claim, plaintiff relies solely upon an allegation in his complaint that Daniel H. Collucci, described as the Association's current President,[1] made this agreement at a meeting. Even if plaintiff's certification that the allegations of the complaint "are true and correct to the best of my knowledge and belief" were considered an affidavit "made on personal knowledge,"[2] plaintiff did not present any evidence that Collucci intended or had any authority to enter into a binding agreement on the Association's behalf. Thus, Collucci's alleged statement would not support a finding that the Association made a binding agreement to continue plaintiff's membership notwithstanding his representation of municipalities in adversarial proceedings against chiefs of police.
In sum, plaintiff's interest in continuing his retired membership in the Association does not outweigh the Association's interest in barring membership by a person engaged in professional activities that conflict with the Association's objectives. Moreover, plaintiff's expulsion does not violate any public policy relating to the right of municipal governments to retain legal counsel of their choice. Therefore, the trial court correctly concluded that the judiciary should not intervene in the Association's decision to expel plaintiff.
Affirmed.
NOTES
[1] Counsel indicated at oral argument that Mr. Collucci did not occupy this position when he made the alleged agreement with plaintiff.
[2] The court rules provide that a party opposing a motion for summary judgment may not rest upon mere allegations or denials of the pleadings, R. 4:46-5(a), but must respond by affidavits "made on personal knowledge." R. 1:6-6. A statement that the allegations of a complaint are true "to the best of the [affiant's] knowledge and belief" does not satisfy this requirement. Lippmann v. Hydro-Space Technology, 77 N.J.Super. 497, 504, 187 A.2d 31 (App.Div.1962).