NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3630-15T1
HARRY JAY LEVIN
and LEVIN CYPHERS,

 Plaintiffs-Appellants,

v.

BOARD OF TRUSTEES OF
OCEAN COUNTY BUSINESS
ASSOCIATION,

 Defendant-Respondent,

and

CHUCK LAING, JAMES EVERETT,
PETER FERRO, GLENN VAN PELL,
STEVE POLLACK, LISA MCCOMSEY,
CHRIS ROSATI, GERRY RODELLI,
SHEREE ROBINSON, PAUL LOSEFF,
and CHAD WHITE, Members of the
Board of Trustees, OCEAN COUNTY
BUSINESS ASSOCIATION GRIEVANCE
COMMITTEE and MEMBERS OF THE
GRIEVANCE COMMITTEE, Individually,1

 Defendants.

________________________________________________________________

 Argued May 23, 2017 – Decided August 25, 2017

1
 A stipulation of dismissal without prejudice was filed as to
the individual defendants on July 20, 2011; they are not parties
to this appeal.
 Before Judges Messano and Espinosa.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Ocean County, Docket No.
 C-123-11.

 Harry Jay Levin argued the cause for
 appellant (Levin Cyphers, attorneys; Mr.
 Levin, Colleen Flynn Cyphers and Ronald J.
 Bakay, on the briefs).

 William J. Raulerson argued the cause for
 respondent (Law Offices of Stephen E.
 Gertler, attorneys; Cynthia A. Satter, on
 the brief).

PER CURIAM

 Ocean County Business Association (OCBA) is a private

business organization "whose stated purpose is to advance the

interest of business in Ocean County." OCBA terminated the

membership of plaintiff Harry Jay Levin, an attorney, after a

grievance was filed by another OCBA member. Plaintiffs initiated

this litigation to compel OCBA to reinstate Levin's membership.2

They appeal from a March 18, 2016 order, granting the summary

judgment motion of defendant Board of Trustees of OCBA and denying

plaintiffs' motion to enforce litigant's rights. We affirm.

2
 The lawsuit was brought by Levin and his law firm, Levin Cyphers.
The complaint asserts Levin was a member of OCBA, makes no
corresponding allegation as to Levin Cyphers and seeks the
reinstatement of "plaintiff," a singular designation. We
therefore refer to Levin and Levin Cyphers as "plaintiffs" and
identify the individual and law firm individually where
appropriate.

 2 A-3630-15T1
 I.

 Levin Cyphers retained the services of another OCBA member,

Adam Safeguard & Inquiry Systems, Inc. (Adam Safeguard), owned by

Dennis DeMey, to perform investigative services. In December

2010, DeMey filed suit against Levin Cyphers for failure to pay

fees that were owed for services rendered. In January 2011, DeMey

filed a grievance with OCBA against Levin, asserting he had failed

to pay any invoices for work Adam Safeguard had been retained to

perform. Levin was advised of the grievance and asked for a

response. Levin acknowledged generally that he had retained Adam

Safeguard to perform work on behalf of clients, identified certain

criticisms of the invoices and contended the grievance process

should not serve as an alternate form of collections processing

but rather should be delayed pending the adjudication of the

lawsuit.

 Approximately six weeks later, Levin received an e-mail from

then-president of the OCBA, Chuck Laing, terminating Levin and his

law firm from the association, "effectively immediately." Levin

unsuccessfully sought an adjournment of the grievance process

pending resolution of DeMey's lawsuit. The request was denied.

 In June 2011, plaintiffs filed a verified complaint seeking

immediate reinstatement as members of OCBA, and an order to show

cause (OTSC) seeking emergent relief. Defendant subsequently

 3 A-3630-15T1
filed an answer, separate defenses, jury demand, and

certifications.

 The following month, Levin Cyphers settled with Adam

Safeguard. The parties entered into a consent order of settlement

in which all claims and counterclaims were dismissed with

prejudice. The consent order also provided:

 [B]y entering into this Consent Order of
 Settlement, the parties hereby mutually
 release, relinquish, discharge and waive any
 and all claims they have or may have by and
 against each other, including those raised or
 which could have been raised in this
 litigation, including all claims known or
 unknown by them up to the date of this Consent
 Order of Settlement . . . .

 In September 2011, after hearing oral argument on the OTSC

the trial judge found the process that resulted in plaintiffs'

expulsion from OCBA was "flawed and did not comply with the OCBA

Constitution." He ordered the grievance process to be "reinstated,

providing [plaintiffs] the opportunity to address the grievance

as part of a fair and impartial process," and set forth a procedure

to be followed:

 Plaintiffs objected to the makeup of the grievance committee

that was selected. The trial judge entered a new order, appointing

the third member of the grievance committee, and setting new dates

for actions by the grievance committee and plaintiffs.

 4 A-3630-15T1
 After meeting with the parties and receiving supporting

documents from them, the grievance committee unanimously

recommended that plaintiffs' membership be terminated.

 Plaintiffs filed a summary judgment motion, seeking

reinstatement and arguing defendant failed to follow its own

constitution and the court's orders. Defendant filed a cross-

motion for summary judgment, "arguing that plaintiffs did not have

a sufficient interest to warrant judicial intervention." The

trial judge denied plaintiffs' summary judgment motion and granted

defendant's summary judgment motion.

 Plaintiffs appealed. In an unpublished opinion, Levin v.

Board of Trustees of Ocean County Business Association, A-5596-11

(Mar. 1, 2013), certif. denied, 216 N.J. 4 (2013), we reversed the

grant of summary judgment to defendant, reinstated the complaint

and affirmed the denial of plaintiff's summary judgment motion

"insofar as it sought immediate reinstatement." Id. at 13. We

acknowledged plaintiffs were provided with the written grievance

prior to being interviewed by the grievance committee. The

grievance procedure remained flawed and "fundamentally unfair,"

however, because defendant did not provide plaintiffs "with the

right to confront the grievant" or "a hearing before the board."

Ibid. We remanded to the trial court, compelling a new grievance

procedure that was not "to be equated with the similar rights

 5 A-3630-15T1
guaranteed by our federal and state constitutions," but conducted

pursuant to the following procedures:

 The right to confront the grievant at the
 hearing before the board may be brief and
 informal, but plaintiffs have a right to be
 present at all stages at which the grievant
 provides information both before the grievance
 committee, which should be reconstituted with
 members not involved in the prior proceedings,
 and before the board. Plaintiffs should be
 offered the right to elicit information from
 the grievant in the proceedings before the
 grievance committee . . . .

 [Id. at 13-14.]

 After our decision, plaintiffs filed a motion to enforce the

settlement with Adam Safeguard, seeking to bar DeMey from appearing

at the grievance proceeding because he had released all claims in

the settlement. The trial judge denied the motion, noting that

the settlement with DeMey did not bind the OCBA or preclude it

from calling DeMey as a witness.

 In December 2014, the trial judge prepared an order setting

forth the grievance procedure to be followed and reviewed it, line

by line, with counsel. Relevant to this appeal, the resulting

order addressed the composition of the grievance committee in the

following language:

 1. The grievance shall be heard by a
 new Grievance Committee constituted with three
 members not part of the prior committees or
 part of prior boards which have participated
 in the grievance. The new committee shall be

 6 A-3630-15T1
 constituted as soon as practical. The
 selection shall be conducted at the next
 regularly scheduled meeting after January 1,
 2015.

 2. The new Grievance Committee shall be
 selected randomly from OCBA members who
 consent and have not otherwise been excluded
 by [the] Court pursuant to paragraph 1.

 The proposed order provided for plaintiffs to "provide a

written list . . . of any current OCBA member which Mr. Levin has

in good faith . . . a conflict and should not be permitted to hear

this grievance." Levin abjectly refused to do so, stating there

was "no reason for [him] to identify to a group of people that

[he's] got conflicts with them," and that he "[didn't] want a list

floating around there of the people that [he has] conflicts,

potentially conflicts with." As a result of Levin's objection,

two paragraphs were deleted from the proposed order. The next

paragraph that was proposed called for the random selection of

OCBA members who volunteer and have not otherwise been excluded.

Levin objected to that on the ground that volunteers would be

inclined to be biased. Following his objection, the paragraph was

revised to the language that was included in the order.

 At the end of the review process, Levin expressly withheld

his consent to the form of the order and stated, "I think Your

Honor has exceeded what the Appellate Division has said you should

do."

 7 A-3630-15T1
 A new grievance committee, consisting of Richard Gilchrest,

Tony Baumer and Warren Segall, was convened on June 1, 2015. None

of the three were named defendants in the complaint filed by

plaintiffs or participated on the prior grievance committee. The

committee issued its findings and conclusion in writing that

plaintiffs violated OCBA Bylaws, Article XI 3-d, which was also a

violation of the "OCBA Code of Ethics: Provide goods and services

as promised and on time."3 The grievance committee recommended to

the OCBA Board of Directors that "Levin not be reinstated to

membership."

 Defendant Board of Trustees of OCBA conducted a hearing on

the grievance, at which both Levin and the grievant were allowed

"to present their cases as if for the first time." At the outset

of the hearing, each attendee stated his or her name for the

record. Four of the Board members, Lisa McComsey, Chad White,

Sheree Robinson and Chuck Laing, had been individually named

defendants in plaintiffs' lawsuit before plaintiffs voluntarily

dismissed them without prejudice in July 2011. Levin did not

object to their participation.

3
 OCBA has a Code of Ethics which, in part, requires its members
to "[r]esolve all complaints in a timely manner" and "[r]espect
all customers, employees, suppliers, and competitors."

 8 A-3630-15T1
 Levin was given an opportunity to directly address the Board

concerning each matter and "provide all information he had." He

was able to cross-examine the grievant, and address the evidence

presented.

 The Board reviewed the Grievance committee's findings and

concluded its recommendation was justified. By unanimous vote,

the Board concurred with the recommendation that Levin not be

reinstated to membership. In addition to Laing, who recused

himself from voting "because of possible conflict in this matter,"

McComsey, Robinson, and White, the Board members in attendance who

voted were: Regina L. Gelzer, Joseph Caldeira, Andrew Knox, Sandra

Levine, and Christopher Aldrich.

 Thereafter, defendant filed a motion for summary judgment and

plaintiffs filed a cross-motion to enforce litigant's rights

pursuant to Rule 1:10-3. Following oral argument, the trial judge

granted defendant's motion for summary judgment, denied

plaintiffs' motion to enforce litigant's rights as moot, and denied

defendant's motion to preclude portions of plaintiffs' briefs.

 II.

 On appeal, plaintiffs argue they should be reinstated as

members of OCBA. They assert they were not provided a fair and

impartial hearing because OCBA Board members who decided whether

plaintiffs should be reinstated were previously named as

 9 A-3630-15T1
defendants in this matter and therefore had a conflict of interest.

They also contend that, as part of the settlement with Adam

Safeguard, DeMey agreed not to participate in the OCBA grievance

procedure, effectively ending the grievance. Plaintiffs argue the

trial court erred in failing to enforce the settlement agreement

pursuant to this interpretation. Defendant counters that

plaintiffs waived any objection to the composition of the Board

and that, in any event, there was no conflict of interest.

Defendant argues further the trial court did not err in concluding

the settlement agreement between plaintiffs and Adam Safeguard did

not foreclose DeMey from appearing at the grievance hearing.

 After considering these arguments in light of the record and

applicable principles of law, we conclude plaintiff's arguments

lack merit and further, that the argument regarding the settlement

agreement with Adam Safeguard lacks sufficient merit to warrant

discussion in a written opinion.4 R. 2:11-3(e)(1)(E).

4
 After prevailing in their appeal, specifically winning the right
to confront DeMey at the new grievance proceeding, plaintiffs
attempted to foreclose any testimony from him through their motion
to enforce settlement. At oral argument, the trial judge noted
the issue regarding whether DeMey could testify against plaintiffs
had existed since 2011, when the case was settled, and that "[t]he
Appellate Division had a right to know that" in deciding the
parameters of the proper procedure to be followed. Levin replied,
"No, they didn't." We agree with the trial judge, both in this
observation and in his disposition of the motion.

 10 A-3630-15T1
 III.

 In reviewing a summary judgment decision, we view the evidence

"in the light most favorable to the non-moving party" to determine

"if there is a genuine issue as to any material fact or whether

the moving party is entitled to judgment as a matter of law." Rowe

v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012) (citing Brill v.

Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)). We

review questions of law de novo, and need not accept the trial

court's conclusions of law. Davis v. Devereux Found., 209 N.J.

269, 286 (2012).

 Although plaintiffs argue to the contrary, there are no

material issues of fact here. The issue is a purely legal

question, whether the procedure followed by the Board conflicts

with public policy, its own internal rules or any order of the

court.

 "Private associations do not have unfettered discretion with

respect to their membership decisions." Cipriani Builders, Inc.

v. Madden, 389 N.J. Super. 154, 164 (App. Div. 2006) (citing

Rutledge v. Gulian, 93 N.J. 113, 118-24 (1983); Higgins v. Am.

Soc'y of Clinical Pathologists, 51 N.J. 191, 198-204 (1968);

Falcone v. Middlesex Cty. Med. Soc'y, 34 N.J. 582, 588-98 (1961)).

When a member seeks judicial intervention regarding a private

association's member decision, the court must determine whether

 11 A-3630-15T1
"'plaintiff [has] an interest sufficient to warrant judicial

action,' and if such an interest is shown, whether 'that interest

[has] been subjected to unjustifiable interference by the

defendant[.]'" Cipriani, supra, 389 N.J. Super. at 165

(alterations in original) (citing Rutledge, supra, 93 N.J. at

118). When, as here, the private association is a professional

or trade association, "a court will extend greater protection to

membership." Id. at 166. Still, our review of a private

association's membership decision is limited. Ibid. We will

"provide relief . . . only if the association's rules or its

actions . . . 'conflict with public policy.'" Id. at 166-67

(quoting Higgins, supra, 51 N.J. at 202). "The essence of a fair

procedure for expulsion of a member of a private association,

particularly one that affects the member's economic interests, is

notice of the basis for the proposed expulsion and a fair

opportunity for the member to respond to the charges." Id. at

170.

 In this case, it was determined that plaintiffs have an

interest sufficient to warrant judicial action, Levin, supra, slip

op. at 10, and that the procedure initially employed to terminate

plaintiffs' membership was fundamentally unfair. At our

direction, plaintiffs were to be afforded a new hearing at which

they would be provided the rights: to be present at all stages at

 12 A-3630-15T1
which the grievant provided information to the grievance committee

and the board, to confront the grievant, and to elicit information

from the grievant in the proceedings before the grievant committee.

We also directed that the grievance committee "be reconstituted

with members not involved in the proceedings." Thereafter, the

trial judge entered a very detailed order regarding the procedure

to be followed that was designed to implement the principles we

outlined in our decision.

 Plaintiffs do not contend that defendant failed to honor any

of the procedural safeguards required by our prior decision, the

trial court's detailed order or the constitution and bylaws of

OCBA. Specifically regarding the heavily litigated issue of the

membership of the grievance committee, we note the three members

were neither named defendants nor participants on the original

grievance committee.

 Plaintiffs' claim they were denied a fair and impartial

hearing is based upon the fact that the voting Board included

members who had been individual defendants in this case.

Plaintiffs claim they were unaware that these Board members would

participate in the grievance decision-making. This contention,

which was rejected by the trial court, is irremediably refuted by

the record. As we have noted, all the Board members identified

themselves by name at the outset of the hearing. Moreover, when

 13 A-3630-15T1
questioned by the trial judge, Levin conceded he was aware board

members were in the room that he named in the litigation previously

because "[t]hey all sat in the front." Even if, as plaintiffs

contend now, Levin was unaware which of the Board members would

vote, it was incumbent upon him to inform the Board that he

objected to having former defendants participate in the decision.

Yet, no objection was made.

 As the trial judge correctly pointed out, the Board of

Trustees of OCBA was the lead defendant in this matter. Therefore,

the ultimate decision on whether plaintiffs would be reinstated

was always going to be made by an entity named as a defendant in

this action. And, although argument was presented regarding the

participation of individual defendants in the grievance committee,

no argument was ever presented regarding who could participate at

the Board level.

 The record clearly shows plaintiffs were provided "[t]he

essence of a fair procedure . . . notice of the basis for the

proposed expulsion and a fair opportunity for the member to respond

to the charges." Cipriani, supra, at 170. The very nature of our

review of a private association's decisions on these matters

assumes that the final decision will be made by the association

whose decision has been challenged. Plaintiffs have cited no

authority that dictates the exclusion of Board members on the

 14 A-3630-15T1
basis they raised for the first time following the Board's

decision. We are satisfied the hearing complied with public

policy, the OCBA's internal rules and the directions of this court

and the trial court.

 Affirmed.

 15 A-3630-15T1